**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE<br>Name Withheld, Address Withheld,<br><br>JENNY DOE, a minor child, by and through her parents and natural guardians, MARY DOE and DAN DOE<br>Name Withheld, Address Withheld,<br><br>MARY DOE, Mother of JANE DOE and JENNY DOE<br>Name Withheld, Address Withheld,<br><br>and<br><br>DAN DOE, Father of JENNY DOE<br>Name Withheld, Address Withheld,<br><br>Plaintiffs,<br><br>vs.<br><br>OHIO HI-POINT SCHOOL DISTRICT BOARD OF EDUCATION<br>2280 State Route 540<br>Bellefontaine, Ohio 43311,<br><br>RICK SMITH, Superintendent of Ohio Hi-Point School District Individually and in his official capacity, | Case No. 2:20-cv-4798<br><br>Judge _____<br><br>Magistrate Judge _____<br><br>Jury Demand Endorsed Hereon |

1

TONYA N. RAMEY, Director,
Ohio Hi-Point Career Center
Individually and in her official capacity,

JON COOK, Dean of Students,
Ohio Hi-Point Career Center
Individually and in his official capacity,

JOHN WILSON, Diesel Technology
Instructor, Ohio Hi-Point Career Center
Individually and in his official capacity,

ROBIN HARRINGTON, Special
Education Coordinator,
Ohio Hi-Point Career Center
Individually and in her official capacity,

JACLYN ATHERTON, Math Instructor,
Ohio Hi-Point Career Center
Individually and in her official capacity,

MELISSA GONGLIK, School Counselor,
Ohio Hi-Point Career Center
Individually and in her official capacity,

KAITLYN KING, English Instructor,
Ohio Hi-Point Career Center
Individually and in her official capacity,

CALEB LANG, Academic/Student
Services Supervisor,
Ohio Hi-Point Career Center
Individually and in her official capacity,

AMY McCARTHY, Nurse,
Ohio Hi-Point Career Center
Individually and in her official capacity,

MINOR STUDENT 1, a minor,

DONNA JEAN WILLIAMS,
Guardian of Minor Student 1
1446 TR 204
Bellefontaine, Ohio 43311,

MINOR STUDENT 2, a minor
Address Unknown,

JOHN/JUDY ROES #1-10,
Ohio Hi-Point School District
employees, administrators, and teachers,
in their official and individual capacities
Names Unknown
Addresses Unknown,

and

JOHN/JUDY ROES #11-33,
students and/or former students of Ohio
Hi-Point Career Center
Names Unknown
Addresses Unknown,

Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES, WITH JURY DEMAND ENDORSED HEREON**

**NATURE OF ACTION**

This action challenges the bullying, harassment, and sexual discrimination suffered by Plaintiff Jane Doe at the Ohio Hi-Point Career Center in Bellefontaine, Logan County, Ohio.  Shortly after beginning her senior year at the vocational school after years of home-schooling, Plaintiff Jane Doe was continually bullied, harassed, assaulted, battered, raped, and discriminated against in school because of her disability, sex, gender,

3

and perceived sex stereotyping. Plaintiff Jane Doe, her mother, Plaintiff Mary Doe, and Plaintiff Dan Doe tried to end the bullying and harassment, and repeatedly pleaded with certain Defendants for help. Defendants failed to stop the bullying and harassment, allowing it to continue and escalate. Consequently, Plaintiff Jane Doe suffered severe anguish, distress, and depression, ultimately forcing her to take a medical leave and miss the entire remainder of her senior year of high school.

This civil rights action is brought under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12131 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Individuals with Disabilities Education Act (IDEA); Title IX of the Education Amendments of 1972, as amended; Mandatory Reporting Requirements under R.C. §5123.01; 34 U.S.C. §20341 for violations of the Child Abuse Protection Act; 42 U.S.C. §1983 for violations of substantive due process and equal protection under the Fourteenth Amendment; violations of the right to free speech under the First and Fourteenth Amendments; torts of common law false imprisonment and intentional infliction of emotional distress; and civil recovery for criminal acts under R.C. 2307.60, including for kidnapping, abduction, and failure to report a crime. In this complaint, Plaintiff Jane Doe alleges that when she reported sexual harassment and brutal rape to teachers and administrators at Ohio Hi-Point Career Center, Defendant Director Ramey and many others failed their mandatory reporting requirements and then retaliated against Plaintiff Jane Doe for having reported the misconduct. Title IX guarantees that no student should have to endure repeated assault and retaliation for reporting sexual assault. Plaintiff Jane Doe has a constitutional right to life, liberty, and property that includes a substantive due process right to bodily integrity, a right "implicitly in the concept of ordered liberty."

4

*Marcum v. Bd. Ed. Bloom-Carroll School District*, 727 F.Supp. 457, 672-73 (USDC SD Ohio 2010).

This civil rights action seeks damages and seeks to reform the Ohio Hi-Point School District Board of Education's policies and practices for responding to bullying, harassment, assault, battery, rape, and discrimination.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. Jurisdiction is also proper over Plaintiffs' claims under 28 U.S.C. §2201-2202 because Plaintiffs seek a declaration of their civil rights. This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 29 U.S.C. §1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims. Jurisdiction over federal claims also lies under Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681–88, and under 42 U.S.C. §§1983 and 1988, which provide for damages and attorney and expert fees for vindication of civil rights claims, asserted under 28 U.S.C. §§1331 and 1343.

2. Venue is proper in this Court under 28 U.S.C. §1391(b) because one or more of the Defendants resides within this Court's judicial district and all of the events or omissions giving rise to the claims occurred within the judicial district.

## PARTIES

3. At all times pertinent to this Complaint, Plaintiff Jane Doe (name and address withheld) was a resident of Bellefontaine, Logan County, Ohio, and a student at the Ohio Hi-Point Career Center, a vocational school within Defendant Ohio Hi-Point

School District Board of Education's boundary and control. Plaintiff Jane Doe is a person with a severe mental disability of borderline mental retardation, with a tested IQ of 83 as shown on her 2016 IEP, which placed her IQ in the 13th percentile with a permanent mental capacity of a 14-year-old, and qualified her as a disabled person within the meaning of the Americans with Disabilities Act, which consequently entitles her to special protection. As a result, Plaintiff Jane Doe was eligible for special services in a public school called an Individualized Education Program ("IEP").

4. At all times pertinent to this Complaint, Plaintiff Mary Doe (name and address withheld) is the mother of Plaintiffs Jane and Jenny Doe, and a resident of Bellefontaine, Logan County, Ohio.

5. At all times pertinent to this Complaint, Plaintiff Jenny Doe (name and address withheld) is the minor sister of Plaintiff Jane Doe, and the daughter of Plaintiffs Mary and Dan Doe, and a resident of Bellefontaine, Logan County, Ohio.

6. At all times pertinent to this Complaint, Plaintiff Dan Doe (name and address withheld) is the stepfather of Plaintiff Jane Doe, husband of Plaintiff Mary Doe, and father of Plaintiff Jenny Doe, and a resident of Bellefontaine, Logan County, Ohio.

7. At all times pertinent to this Complaint, Defendant Ohio Hi-Point School District Board of Education ("Defendant Ohio Hi-Point School Board") is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations, and procedures in effect for the Ohio Hi-Point School District. Defendant Ohio Hi-Point School Board is a "person" within the meaning of 42 U.S.C. §1983 and a political subdivision under the laws of the State of Ohio. Upon information and belief, Defendant Ohio Hi-Point School Board receives federal financial assistance in the operation of the vocational

school where Plaintiff Jane Doe was enrolled, Ohio Hi-Point Career Center, located at 2280 State Route 540, Bellefontaine, Ohio 43311.

8.  At all times pertinent to this Complaint, Defendant Rick Smith ("Defendant Superintendent Smith") is and was the Superintendent of the Ohio Hi-Point School District. In his capacity as Superintendent, acting under color of law, he holds final policy-making authority for the Ohio Hi-Point School District with respect to implementation of all official governmental laws, policies, regulations, and procedures governing the Ohio Hi-Point Career Center, including enforcement of anti-bullying, anti-harassment, anti-assault/battery, anti-rape, and anti-discrimination policies within the Ohio Hi-Point School District. As Superintendent, he has the ability and authority to take corrective action on behalf of the Ohio Hi-Point School District to stop bullying, harassment, assault, battery, rape, rape culture, and discrimination within the Ohio Hi-Point School District and to discipline perpetrators of such actions. Defendant Superintendent Smith is sued in both his individual and official capacities.

9.  At all times pertinent to this Complaint, Defendant Tonya N. Ramey ("Defendant Director Ramey") is and was the Director of Ohio Hi-Point Career Center. In her capacity as Director, acting under color of law, she held final policy-making authority for the Ohio Hi-Point School District with respect to implementation and enforcement of all official governmental laws, policies, regulations, and procedures governing the Ohio Hi-Point Career Center, including implementation and enforcement of anti-bullying, anti-harassment, anti-assault/battery, anti-rape, and anti-discrimination policies within the Ohio Hi-Point School District. As Director, she has the ability and authority to take corrective action on behalf of the Ohio Hi-Point School District to stop bullying, harassment, assault, battery, rape, rape culture, and discrimination

within the Ohio Hi-Point School District and to discipline perpetrators of such actions. Defendant Director Ramey is sued in both her individual and official capacities.

10. At all times pertinent to this Complaint, Defendant Jon Cook ("Defendant Dean of Students Cook") is and was the Dean of Students at Ohio Hi-Point Career Center. In that capacity, acting under color of law, he held policy-making authority for the Ohio Hi-Point School District with respect to implementation and enforcement of all official governmental laws, policies, regulations, and procedures governing the Ohio Hi-Point Career Center, including implementation and enforcement of anti-bullying, anti-harassment, anti-assault/battery, anti-rape, and anti-discrimination policies within the Ohio Hi-Point School District. As Dean of Students, he has the ability and authority to take corrective action on behalf of the Ohio Hi-Point School District to stop bullying, harassment, assault, battery, rape, rape culture, and discrimination within the Ohio Hi-Point Career Center and to discipline perpetrators of such actions. Defendant Dean of Students Cook is sued in both his individual and official capacities.

11. At all times pertinent to this Complaint, Defendant John Wilson ("Defendant Diesel Instructor Wilson") is and was a full-time employee of Ohio Hi-Point Career Center, serving in the capacity of Diesel Lab Instructor, and is sued in both his individual and official capacities.

12. At all times pertinent to this Complaint, Defendant Robin Harrington ("Defendant Special Ed Coordinator Harrington") is and was a full-time employee of Ohio Hi-Point Career Center, serving in the capacity of Special Education Coordinator, and is sued in both her individual and official capacities.

13. At all times pertinent to this Complaint, Defendant Jaclyn Atherton ("Defendant Instructor Atherton") is and was a full-time employee of Ohio Hi-Point Career Center,

serving in the capacity of Math Instructor, and is sued in both her individual and official capacities.

14. At all times pertinent to this Complaint, Defendant Melissa Gonglik ("Defendant School Counselor Gonglik") is and was a full-time employee of Ohio Hi-Point Career Center, serving in the capacity of School Counselor, and is sued in both her individual and official capacities.

15. At all times pertinent to this Complaint, Defendant Kaitlyn King ("Defendant English Instructor King") is and was a full-time employee of Ohio Hi-Point Career Center, serving in the capacity of English Instructor, and is sued in both her individual and official capacities.

16. At all times pertinent to this Complaint, Defendant Caleb Lang ("Defendant Supervisor Lang") is and was a full-time employee of Ohio Hi-Point Career Center, serving in the capacity of Academic/Student Services Supervisor, and is sued in both his individual and official capacities.

17. At all times pertinent to this Complaint, Defendant Amy McCarthy ("Defendant Nurse McCarthy") is and was a full-time employee of Ohio Hi-Point Career Center, serving in the capacity of Nurse, and is sued in both her individual and official capacities.

18. At all times pertinent to this Complaint, upon information and belief, Defendant Minor Student 1 was a minor child residing in Bellefontaine, Logan County, Ohio, enrolled as a student at the Ohio Hi-Point Career Center, and is now an emancipated adult.

19. At all times pertinent to this Complaint, Defendant Donna Jean Williams is and was a resident at 1446 TR 204, Bellefontaine, Logan County, Ohio, and had custody and control of Defendant Minor Student 1.

20. At all times pertinent to this Complaint, upon information and belief, Defendant Minor Student 2 was a minor child residing in Bellefontaine, Logan County, Ohio, enrolled as a student at the Ohio Hi-Point Career Center, and may now be an emancipated adult.

21. At all times pertinent to this Complaint, Defendants John/Judy Roes #1-10, whose names and addresses could not be discovered as of the time of filing this Complaint, are believed to be full time employees, administrators, or teachers of the Ohio Hi-Point Career Center who, in that capacity and acting under color of law, were and/or are responsible for the formulation and implementation of all official governmental laws, policies, regulations, and procedures in effect for the Ohio Hi-Point School District, and are sued in both their individual and official capacities.

22. At all times pertinent to this Complaint, Defendants John/Judy Roes #11-33, whose names and addresses could not be discovered as of the time of filing this Complaint, are believed to be students and/or former students of the Ohio Hi-Point Career Center who bullied, harassed, assaulted, battered, and/or discriminated against Plaintiff Jane Doe on the basis of her sex and disability.

### STATEMENT OF FACTS

23. Plaintiff Jane Doe has been the victim of a deliberate, customary practice of willful indifference to her rights by Defendant Ohio Hi-Point School Board, Defendant Superintendent Smith, Defendant Director Ramey, Defendant Dean of Students Cook, Defendant Diesel Instructor Wilson, Defendant Special Ed Coordinator Harrington, Defendant Instructor Atherton, Defendant School Counselor Gonglik, Defendant

Supervisor Lang, Defendant English Instructor King, Defendant Nurse McCarthy, and Defendant John/Judy Roes #1-10 (collectively, "Ohio Hi-Point Defendants").

24. Plaintiff Mary Doe first contacted Ohio Hi-Point Career Center in April 2019 to let the school know that Plaintiff Jane Doe would like to participate in its welding program during her senior year, and began making arrangements for her IEP and transcripts to be transferred from her previous school, Virtual Academy.

25. On or about April 26, 2019, Plaintiff Jane Doe submitted her application to Ohio Hi-Point Career Center.

26. The 2019 Ohio Hi-Point Career Center school year started on August 14, 2019, for all new students, but Plaintiff Jane Doe's records were not yet transferred and she was not able to start on the first day of school.

27. On August 24, 2019, Plaintiff Jane Doe received a congratulatory letter stating, "Welcome to Ohio Hi Point Welding & Fabrication" from Ohio Hi-Point Career Center telling her that she was admitted to the school's welding program beginning that fall.

28. On August 26, 2019, a representative of Ohio Hi-Point Career Center called Plaintiff Jane Doe to tell her that her place in the welding program had been given to a male student. The representative offered to enroll Plaintiff Jane Doe in cosmetology, nursing, or childcare as alternatives to her first choice, welding. Plaintiff Jane Doe told the representative that she was not interested in a career in the areas offered and she wanted to become a welder. In response, the representative suggested that Plaintiff Jane Doe join the diesel engine program and pushed her to make a decision immediately, while on the phone. Feeling pressured, Plaintiff Jane Doe agreed to join the diesel engine program.

29. Ohio Hi-Point Defendants did not make any effort to consider Plaintiff Jane Doe's disabilities when pushing her to choose the diesel engine program. Plaintiff Jane Doe's IEP shows that study of a subject matter such as diesel engines conflicts with Plaintiff Jane Doe's abilities and, therefore, would require substantial support from the school in order for her to be successful. Failing to take her specific disabilities into consideration is contrary to the spirit of IDEA, which states that a vocational education "is based on the individual child's needs, taking into account the child's strengths, preferences, and interests; and includes instruction, related services, community experiences, the development of employment and other post-school adult living objectives, and if appropriate, acquisition of daily living skills and functional vocational evaluation." 34 CFR 300.320(b); 20 U.S.C. 1414(d)(1)(a)(i)(VIII)(aa)-(bb).

30. At the time she started at Ohio Hi-Point Career Center, Plaintiff Jane Doe's class schedule and teachers were as follows: Truck Engines: Defendant Diesel Instructor Wilson; Street Law: Terry Snyder; Lunch; Advisory 1: Defendant Diesel Instructor Wilson; Science & Society: Summer Priest; English 12: Kathryn Simmons; BA Algebra II: Defendant Instructor Atherton.

31. On August 30, 2019, Plaintiff Jane Doe attended her first day at Ohio Hi-Point Career Center, where she participated in Defendant Diesel Instructor Wilson's Truck Engine class. Plaintiff Jane Doe's late start in the class, together with her documented disabilities and lack of any support, prevented her from catching up to the other students who had already been attending for over two weeks. Without any support or supervision from Defendant Dean of Services Cook or Defendant Diesel Instructor Wilson, her fellow students began to bully and abuse Plaintiff Jane Doe.

12

32. Plaintiff Jane Doe rode the school bus with Minor Student 1 and was placed in two of the same classes with him, math with Defendant Instructor Atherton and English 12 with Kathryn Simmons.

33. Minor Student 1 was physically and emotionally possessive with Plaintiff Jane Doe beginning on her first day of school, frequently touching and grabbing her body, including her breasts, arms, vagina, and buttocks, openly during class and in the hallways, grabbing her by the crotch and proclaiming for all to hear, "this is mine."

34. Many fellow students witnessed this rough, possessive behavior by Minor Student 1 and attempted to tell Minor Student 1 to stop.

35. On September 5, Defendant School Counselor Gonglik sent an email to Plaintiff Mary Doe asking for a copy of Plaintiff Jane Doe's IEP, which should have been received and considered by Ohio Hi-Point Defendants when enrolling Plaintiff Jane Doe in a class program before the beginning of the school year.

36. During the first weeks of school, on or about September 9, 2019, John Doe #11, a fellow Hi-Point student, asked Plaintiff Jane Doe to engage in sexual activity while in school, texting her, "I low-key wanna fuck you".

37. The next day, on September 10, 2020, Plaintiff Jane Doe reported this sexual harassment by John Roe #11 to Defendant School Counselor Gonglik, who told Plaintiff Jane Doe not to talk with or sit beside the student and that she should report the incident to Defendant Dean of Students Cook.

38. Plaintiff Jane Doe missed school on September 12, 2019, in order to provide support for her sister Plaintiff Jenny Doe, who was afraid due to a complicated dental procedure.

39. On Friday, September 13, 2019, Ohio Hi-Point Defendants demonstrated their indifference to Plaintiff Jane Doe's needs by sending her to the in-school suspension room to make up work from missing school the previous day. Minor Student 1 was in the in-school suspension room serving time for code violations and therefore had access to Plaintiff Jane Doe.

40. On September 13, 2019, Minor Student 1 lured Plaintiff Jane Doe to his home where he lived with his grandmother and, upon information and belief, his legal guardian, Defendant Donna Jean Williams. Minor Student 1 proceeded to brutally rape Plaintiff Jane Doe multiple times at his home and elsewhere in Logan County, restrained Plaintiff Jane Doe in his home against her will, transported her to other locations in Logan County against her will, took her cell phone away from her which prevented her from seeking outside help, and prevented her from leaving by force and/or threat of force, holding Plaintiff Jane Doe against her will and restraining her liberty throughout the course of the weekend September 13, September 14, and September 15, 2019, until she was finally able to escape on Sunday, September 15, 2019 (collectively, "Rape #1").

41. During the weekend of September 13-15, 2019, upon information and belief Defendant Minor Student 1 carried out Rape #1 while in the custody, care, and control of Defendant Donna Jean Williams, and on premises owned by Defendant Donna Jean Williams, who knew or should have known that the rape was occurring in her home and on her premises.

42. As a direct and proximate result of Rape #1, Plaintiff Jane Doe suffered injuries to her body, including without limitation her vagina, anus, rectum, face, hair, scalp, neck, back, chest, breasts, belly, arms, legs, skin, bruises, lacerations, deep bleeding, and

other parts of her body, causing trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, and inability to perform ordinary activities.

43. As a direct and proximate result of her injuries from Rape #1, Plaintiff Jane Doe has incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

44. Plaintiff Jane Doe returned to school the next day, Monday, September 16, 2019, injured, bleeding, and terrified, not knowing where to turn or how to get help.

45. Starting Monday, September 16, 2019, Minor Student 1 would not stop sexually touching, groping, and verbally harassing Plaintiff Jane Doe while at school, frequently squeezing and touching Plaintiff Jane Doe all over her body during the school day, including her vagina and buttocks. These attacks often occurred during class when the two students shared the same classes: Defendant Instructor Atherton's class and Defendant English Instructor King's class. Minor Student 1 also frequently walked into Defendant Diesel Instructor Wilson's diesel classroom across the hallway from Minor Student 1's class, warning the diesel class boys, "[Plaintiff Jane Doe] is mine."

46. Throughout the time period from September 16, 2019, through Plaintiff Jane Doe's last day of school in November 2019, Defendant John/Judy Roes #11-33 and other students of Ohio Hi-Point Career Center sexually harassed, physically threatened, and viciously bullied Plaintiff Jane Doe.

47. Plaintiff Jane Doe reported sexual harassment, bullying, and abuse by Minor Student 1 and others to Defendant Dean of Students Cook on September 17, 2019, after Defendant Counselor Gonglik advised that she should talk with Defendant Dean of

Students Cook. Over the course of the next two months, Plaintiff Jane Doe, Plaintiff Mary Doe, and Plaintiff Dan Doe made more than 25 reports to Ohio Hi-Point Defendants regarding sexual violence, harassment, intimidation, bullying, and discrimination against Plaintiff Jane Doe based on her sex and disability, all of whom failed to respond.

48. John Roe #12 bullied Plaintiff Jane Doe in Defendant Instructor Atherton's class and in Defendant Diesel Instructor Wilson's class, making sexual comments such as, "I like my women thick" so "I don't like you because you're skinny," and "twig".

49. Judy Roe #13 called Plaintiff Jane Doe "dumb."

50. John Roe #14 said Plaintiff Jane Doe had "AIDS" and called Plaintiff Jane Doe a "bathroom whore," stating that he "wouldn't want to breathe same air" as Plaintiff Jane Doe because she "has VD", and warned others, "don't get close to [Plaintiff Jane Doe] because she has "disease"; he also used a shoulder check to crash into and physically batter Plaintiff Jane Doe and participated in specific conversations about her body, and called her "retarded" and "stupid."

51. John Roe #15 warned Plaintiff Jane Doe, "I'm going to break your fucking jaw," told her to "eat my ass" and said, "you are a pussy," "you have no balls," and threatened that he would bring his entire family to kick Plaintiff Jane Doe's family's "ass". He also made sexual jokes to and about Plaintiff Jane Doe, asked her if she "wanted to fuck," and called her, "skinny," "twig,", and said she "looks like bones." Plaintiff Jane Doe had a candy lollipop and John Roe #15 told her to "suck it like a dick," called her "Foreman," and called her "retarded."

52. John Roe #16 and John Roe #17 made sexual comments about Plaintiff Jane Doe's body while discussing boobs, saying she had "nice tits" but had a "flat ass".

16

53. John Roe #18, John Roe #19, John Roe #20, John Roe #21, and John Roe #22 made jokes of a sexual nature during diesel class and held tools up to replicate a penis.

54. John Roe #23 and John Roe #24 called Plaintiff Jane Doe "nasty" for having her period and both called her "retarded."

55. John Roe #25 called Plaintiff Jane Doe via Snapchat and asked her for sex.

56. John Roe #26 and John Roe #27 hit Plaintiff Jane Doe with a shoulder check.

57. John Roe #28 harassed Plaintiff Jane Doe on the bus and in the hallways, stating she had AIDS, commenting on her candy lollipop saying sexually explicit things such as, "suck [the candy] like a dick."

58. This conduct occurred at Ohio Hi-Point Career Center, on its campus, during school hours and/or while Plaintiff Jane Doe attended classes. Defendant Diesel Instructor Wilson, Defendant English Instructor King, and Defendant Instructor Atherton were aware of the sexual harassment and abuse of Plaintiff Jane Doe in their classrooms but failed to take any action to make it stop, instead referring Plaintiff Jane Doe to Defendant Dean of Students Cook, who also did nothing to make the ongoing abuse and harassment stop.

59. On September 17, 2019, Plaintiff Jane Doe reported to Defendant School Counselor Gonglik that Minor Student 1 was sexually harassing her. Defendant School Counselor Gonglik referred Plaintiff Jane Doe to Defendant Dean of Students Cook, who questioned Plaintiff Jane Doe to attempt to determine if the touching was welcomed (it was not), tried to talk her into not filing a report by telling her it was too much paperwork, denied her a No Contact Order, and tried to coerce Plaintiff Jane Doe into purposefully working on a project with Minor Student 1. Defendant Dean of Students Cook promised to investigate but never reported his findings, refused to help Plaintiff

Jane Doe get a Certified Protection Order, and made no effort to remove Minor Student 1 from her environment to ensure her protection from his ongoing sexual harassment and abuse. Defendant Dean of Students Cook continued the same conversation with Plaintiff Jane Doe requesting help and begging for protection nearly every day for the next two weeks.

60. On September 19, 2019, Plaintiffs Dan, Mary, Jane, and Jenny attended an open house for students and their families ("Open House"), during which Defendant Director Ramey publicly cheered Plaintiff Jane Doe for "breaking up" with Minor Student 1, spoke of how she was a "good girl," "always smiling," and encouraged Plaintiff Jane Doe to "not let any man tell you what to do."

61. At this September 19, 2019, Open House, Defendant School Counselor Gonglik also told Plaintiff Jane Doe she was glad Plaintiff Jane Doe "broke up" with Minor Student 1, calling him "toxic", and told Plaintiff Jane Doe that Defendant School Counselor Gonglik was there to support Plaintiff Jane Doe.

62. Also during the Open House, multiple teachers spoke positively about Plaintiff Jane Doe. Kathryn Simmons shared upcoming field trips, her classroom performance, and that they knew that Minor Student 1 was touching Plaintiff Jane Doe and were trying to "keep an eye on" the situation. Defendant Instructor Atherton specifically spoke about giving Plaintiff Jane Doe extra time and placing her in a small group.

63. Starting on or about September 23, 2019, Plaintiff Dan Doe left multiple phone messages with Defendant Dean of Students Cook, asking what was going on with Minor Student 1, why Plaintiff Jane Doe was not being protected, and whether an in-school protective order could be put into place.

64. On September 23, 2019, Plaintiff Jane Doe visited Defendant Dean of Students Cook again to make another report that Minor Student 1 was still sexually harassing her. She also spoke with various staff members and administrators about the situation. No staff member or administrator took any action to remedy the situation.

65. On or about September 25, 2019, Plaintiff Jane Doe reported sexual violence, harassment, intimidation, bullying, and discrimination against Plaintiff Jane Doe based on her sex and disability to the School Resource Officer. The School Resource Officer did not file a police report.

66. On or about September 26, 2019, Plaintiff Jane Doe visited Defendant Cook to report Minor Student 1 was still sexually harassing her. She also spoke with other staff members and administrators. There was no change in the situation.

67. On September 27, 2019, Ohio Hi-Point Career Center hosted a blood drive. Defendant Nurse McCarthy visited various classrooms inviting students to attend the blood drive and assessing their ability to participate. While in Plaintiff Jane Doe's Diesel Lab, in front of the entire classroom of students, Defendant Nurse McCarthy specifically called Plaintiff Jane Doe out of the line of students requesting to participate, stating that Plaintiff Jane Doe could not participate because she was "too skinny," then continued to speak to Plaintiff Jane Doe in a demeaning manner by pointing out that people who had diseases or a sexually transmitted disease (STD) could not give blood anyway because they might give it to the other person. All of the students in the classroom laughed at Plaintiff Jane Doe after hearing Defendant Nurse McCarthy's statements.

68. Following School Nurse McCarthy's comments, the sexual harassment and bullying by Plaintiff Jane Doe's fellow Diesel Lab students increased.

69. On September 27, 2019, Plaintiff Jane Doe again reported to various staff members and administrators that Minor Student 1 was continuing to sexually harass her.

70. The night of September 28, 2019, Friend A posted on Facebook a picture of Plaintiff Jane Doe and Friend A hugging each other.

71. Shortly after this post, Defendant Donna Jean Williams commented on that post: "Plaintiff Jane Doe please leave [Minor Student 1] alone." Plaintiff Jane Doe responded to Defendant Williams's comment, "[Minor Student 1] said he was going to kick my dads ass and said things about my mother and my itire family bashing them. I blocked him from everything hes acting crazy so plz by all means I'm leaving [Minor Student 1] alone[.]" [sic]

72. Every day that Plaintiff Jane Doe was in Defendant Diesel Instructor Wilson's Diesel Lab class, she was subjected to sexual harassment and abuse.

73. Defendant Diesel Instructor Wilson knew of the harassment and abuse of Plaintiff Jane Doe in his Diesel Lab class and did nothing to stop it or to protect her from it.

74. Defendant Diesel Instructor Wilson made Plaintiff Jane Doe clean the tools of all her classmates and did not ensure her safety.

75. Defendant Diesel Instructor Wilson heard, participated in, and encouraged vulgar sexual conversation between and among students during class, creating a hostile and toxic environment for all the students and Plaintiff Jane Doe.

76. Despite his actual knowledge that Plaintiff Jane Doe was bullied and sexually harassed in his class, Defendant Diesel Instructor Wilson failed and refused to take action to stop it, instead allowing the harassment and abuse to escalate and grow.

77. Instead of helping Plaintiff Jane Doe succeed with the normal curriculum of the diesel class, Defendant Diesel Instructor Wilson forced Plaintiff Jane Doe to perform menial

tasks such as cleaning up after the other class members by making her the "Shop Foreman Helper" to another male student who had a cast on his broken leg and who had been given the title, "Shop Foreman." The pair were segregated from other students in one of two tool "cribs", Tool Crib 1 and Tool Crib 2, both located in the Diesel Lab.

78. While acting as "Shop Foreman Helper," Plaintiff Jane Doe was subjected to sexual harassment, bullying, and abuse. Defendant Diesel Instructor Wilson heard the abuse, participated in it, and laughed and encouraged others, and failed to take any action to stop the harassment, which only caused it to escalate.

79. On the morning of September 30, 2019, Minor Student 1 verbally and physically assaulted Plaintiff Jane Doe at the Ohio Hi-Point Career Center/Bellefontaine High School bus stop and on the bus, calling her a "whore" and other names. Plaintiff Jane Doe attempted to return items she had previously received from Minor Student 1 back to him. Once inside the Ohio Hi-Point Career Center building, Minor Student 1 physically assaulted Plaintiff Jane Doe.

80. On September 30, 2019, Plaintiff Jane Doe and Friend A reported to Defendant Dean of Students Cook that Minor Student 1 was still sexually harassing Plaintiff Jane Doe, and that Minor Student 1 was now harassing Friend A. Defendant Dean of Students Cook told Plaintiff Jane Doe that Minor Student 1 was being "nice." Plaintiff Jane Doe and Friend A both wrote reports about Minor Student 1's behavior. Plaintiff Jane Doe asked Defendant Dean of Students Cook for a protection order, but he refused to help Plaintiff Jane Doe get any such order to protect her from Minor Student 1.

81. On October 1, 2019, Plaintiff Jane Doe again went to Defendant Dean of Students Cook to ask for protection because Minor Student 1 had verbally and physically abused her

on the bus again. Defendant Dean of Students Cook told Plaintiff Jane Doe to come back later, and refused to take the report or discuss it further or take any meaningful action in response to her pleas for help.

82. On October 1, 2019, Plaintiff Dan Doe left another message for Defendant Dean of Students Cook asking for help.

83. On October 1, 2019, Defendant Dean of Students Cook called Plaintiff Jane Doe into his office during English class. Plaintiff Jane Doe thought she was finally going to talk with Defendant Dean of Students Cook about Minor Student 1's constant abuse, but instead he told her that he knew about the sexual contact with Friend A in the bathroom and showed her a hallway video. He demanded that Plaintiff Jane Doe turn over her phone at that time and for the remainder of the school day with full access to all her personal information and images. Defendant Dean of Students Cook made her go through her personal phone records with him and then accused her of deleting information from her phone. Defendant Dean of Students Cook made Plaintiff Jane Doe put her password into the phone in front of him so that he knew the password. Defendant Cook accused her of having sex in the bathroom and instructed her to come back at the end of the day to get her phone.

84. On October 1, without due process, Defendant Dean of Students Cook suspended Plaintiff Jane Doe for the following stated reason: "On October 1, 2019, [Plaintiff Jane Doe] engaged in sexual activity in a restroom on the Ohio Hi-Point campus." Plaintiff Jane Doe is suspended for 5 days beginning 10/2/2019." Defendant Dean of Students Cook said to Plaintiff Jane Doe, "There is no way you can get out of this" ("Suspension #1").

85. As instructed by Defendant Dean of Students Cook, Plaintiff Jane Doe went back to his office after school on October 1, 2019, to pick up her phone. At that time, Defendant Dean of Students Cook gave Plaintiff Jane Doe inaccurate suspension paperwork but did not permit her to have a No Contact Order with Minor Student 1. Defendant Dean of Students Cook did not appraise her of her procedural rights and told her there was nothing she could do about Suspension #1. He also did not fulfil the notice requirements to students who are being suspended.

86. On October 1, 2019, Defendant Dean of Students Cook called Plaintiff Dan Doe, finally returning the many calls. Defendant Dean of Students Cook told Plaintiff Dan Doe that he didn't have a chance to talk to Minor Student 1 because he had to do "other things". Defendant Cook said, "I don't have time to talk about Minor Student 1 because Plaintiff Jane Doe is being suspended," and therefore there are "bigger fish to fry," than protecting Plaintiff Jane Doe from harassment.

87. Regarding Suspension #1, Defendant Dean of Students Cook said, "there is nothing you can do about it, you have two options: Either come in and sign the papers stating knowledge about suspension" or Plaintiff Dan Doe could agree to it over the phone and Defendant Cook would e-mail a copy to him. Defendant Dean of Students Cook said there was no way to appeal it and because Friend A confessed, both students would automatically be suspended and neither party would be able to defend themselves. Defendant Dean of Students Cook stated, "there's no fighting it."

88. Plaintiff Jane Doe served the first day of Suspension #1 on Wednesday, October 2, 2019, and continued to remain out of school through Tuesday, October 8, 2019, which caused mental distress and emotional harm to Plaintiff Jane Doe.

89. On October 2, Plaintiff Dan Doe called Ohio Hi-Point Career Center to request a meeting to discuss Minor Student 1 continually sexually harassing Plaintiff Jane Doe and why there had not been a No Contact Order put into place. The meeting took place that day ("October 2 Meeting") and included Defendant Dean of Students Cook, Plaintiff Jane Doe, Plaintiff Mary Doe, Plaintiff Dan Doe, and Friend A, as well as an acquaintance of the Doe family.

90. During the October 2 Meeting, Defendant Director Ramey told Plaintiff Jane Doe that she believed Friend A was "arm candy." Plaintiff Jane Doe corrected Defendant Director Ramey, advising her that Friend A helped to protect Plaintiff Jane Doe from Minor Student 1, and that she was trying to get Minor Student 1 "off her back." Defendant Director Ramey stated, "when you take your pants down, a boy thinks you want to have sex."

91. At the October 2 Meeting, Plaintiff Mary Doe advised Defendant Director Ramey and Defendant Dean of Students Cook that Minor Student 1 had left bruises on Plaintiff Jane Doe, had bitten her on the legs, and had choked her. In response, Defendant Director Ramey acknowledged that what Plaintiff Jane Doe experienced with Minor Student 1 constituted dating violence and abuse, even admitting that she had seen some of it herself, and told Plaintiff Jane Doe that she must file charges against Minor Student 1 since she is 18. Defendant Director Ramey and Defendant Dean of Students Cook stated that a CPO is warranted and overdue after finally listening to what Plaintiff Jane Doe had experienced with Minor Student 1.

92. During the October 2 Meeting, Plaintiff Mary Doe also explained that Plaintiff Jane Doe has a hard time saying "no," and thinks about others before she thinks of herself. Plaintiff Mary Doe explained that Plaintiff Jane Doe is afraid of the police and people

in authority. Plaintiff Jane Doe told Defendant Director Ramey that the police have failed her and she doesn't trust them to do the right thing. Plaintiff Mary Doe explained that Plaintiff Jane Doe is under the care of a medical professional for these conditions.

93. During the October 2 Meeting, Defendant Dean of Students Cook stated that the reason why he had not helped Plaintiff Jane Doe with Minor Student 1 despite Plaintiff Jane Doe's many requests to do so is because he had been "too busy." Defendant Dean of Students Cook also said that he spoke with Minor Student 1 earlier that morning and Minor Student 1 had told Defendant Dean of Students Cook that he "just wants [Plaintiff Jane Doe] to be happy."

94. During the October 2 Meeting, Defendant Dean of Students Cook said the following in response to a question about whether a No Contact Order could apply only to Minor Student 1 and not to Plaintiff Jane Doe: "I don't want [Plaintiff Jane Doe] to speak to [Minor Student 1] and have that be acceptable contact and then that ignites a response from a *volatile* person and then that gets him in trouble." (emphasis added)

95. Defendant Director Ramey and Defendant Dean of Students Cook issued a No Contact Order against Plaintiff Jane Doe following the October 2 Meeting, which demanded that Plaintiff Jane Doe stay away from Minor Student 1.

96. Defendant Director Ramey and Defendant Dean of Students Cook also issued a No Contact Order to Minor Student 1 on October 2, 2019, and told him to stay away from Plaintiff Jane Doe, but the wording was the same on both No Contact Orders: Plaintiff Jane Doe was to stay away from Minor Student 1, not the other way around. Plaintiff Jane Doe believed that this No Contact Order was issued for Minor Student 1 to stay away from her.

97. On October 4, 2019, Plaintiff Jane Doe received a social media message from Friend B that Minor Student 1 and other students were harassing and assaulting Friend B. At one point, for example, Minor Student 1 threw a full-sized Snickers candy bar and hit Friend B in the head and students laughed at Friend B and told her to "put a chain around your neck and kill yourself." A teacher witnessed the incident and wrote up Minor Student 1. On information and belief, Friend B is also disabled and is protected by an IEP.

98. On October 7, 2019, a meeting requested by Plaintiff Mary Doe and Plaintiff Jane Doe was held to discuss and appeal Suspension #1 ("October 7 Meeting"). Defendant Director Ramey, Defendant Special Ed Coordinator Harrington, and Plaintiffs attended, as well as two Doe family acquaintances for support. At the October 7 Meeting, Defendant Director Ramey announced that there is a sexual harassment investigation being started. She also identified herself as the Title IX Investigator and stated that she was investigating the sexual violence and retaliation that Plaintiff Jane Doe received in response to her sexual harassment reporting. Upon information and belief, Defendant Director Ramey introduced Defendant Special Ed Coordinator Harrington as Defendant Director Ramey's "friend" acting as an "advocate" for this meeting, but she is known as the "IEP Caseload Manager."

99. During the October 7 Meeting, Plaintiff Jane Doe disclosed to everyone in attendance that Minor Student 1 violently raped her during the weekend of September 13 through 15, 2019.

100. Upon hearing Plaintiff Jane Doe's disclosure of rape, Defendant Director Ramey looked at Defendant Special Ed Coordinator Harrington and began to laugh and smile, and Plaintiff Mary Doe asked, "what are you smiling about, my daughter just said she

was raped?" Defendant Director Ramey replied, "I'm only smiling because I'm hungry, we haven't eaten yet," and stated she was "tired."

101. At the October 7 Meeting, Plaintiff Jane Doe reported to Defendant Director Ramey that she asked Defendant Dean of Students Cook for help from harassment and abuse multiple times and Defendant Dean of Students Cook had done nothing.

102. At the October 7 Meeting, Plaintiff Mary Doe had to remind Defendant Director Ramey several times that Plaintiff Jane Doe has a disability and does not understand the questions being asked of her. For example, Plaintiff Jane Doe did not understand the meaning of the word "retaliation."

103. At the October 7 Meeting, Defendant Director Ramey chose not to disclose the changes she had planned for Plaintiff Jane Doe's schedule during that meeting, and did not disclose that she was only changing Plaintiff Jane Doe's schedule rather than the schedule of Minor Student 1.

104. On the following day, October 8, 2019, and every day thereafter, mandatory reporters Defendant Director Ramey and Defendant Special Ed Coordinator Harrington failed to report the rape to the appropriate authorities.

105. On or about October 8, 2019, Plaintiff Mary Doe left a voicemail with Defendant Superintendent Smith asking him to call her back regarding the ongoing pattern of sexual violence, harassment, intimidation, bullying, and discrimination against Plaintiff Jane Doe, and separately sent an email to follow up. Defendant Superintendent Smith never returned Plaintiff Mary Doe's phone call or email.

106. News of the reason for Plaintiff Jane Doe's Suspension #1 spread throughout the school, which harmed her name, fame, and reputation. Plaintiff Jane Doe became known as "the girl who had sex in the bathroom." After she returned to school

following Suspension #1, the sexual harassment and bullying of Plaintiff Jane Doe intensified.

107. On October 8, 2019, Defendant Director Ramey requested an additional meeting with Plaintiff Jane Doe via email, to which Plaintiff Jane Doe responded, "I absolutely do not want to meet with you alone and answer questions .i want my parents or my lawyer of my advocates with there with me. i have trouble comprihending [sic] what you are trying to say and it makes me nervous ."

108. On the same day, October 8, 2019, Defendant Director Ramey acknowledged that Plaintiff Jane Doe can have "anyone" present at future meetings that she wanted, and requested a meeting for the following day, October 9, 2019, and asked who else would be present.

109. On or about October 9, 2019, Ohio Hi-Point Defendants removed Plaintiff Jane Doe from her classes and placed her in a new set of classes, telling her it was part of the Title IX investigation. When her classes were changed she was not given the new Schoology codes and was unable to access her new classes. Minor Student 1 was left in all of his previous classes with no changes. Plaintiff Jane Doe attempted to discuss the changing of classes with the Defendant School Counselor Gonglik, who advised Plaintiff Jane Doe that she was unable to discuss it with her and she must go to Defendant Dean of Students Cook or Defendant Director Ramey if she wanted to discuss it.

110. On or about October 9, 2019, in response to an email from Plaintiff Mary Doe, Defendant Director Ramey stated that moving Plaintiff Jane Doe's classes was required due to the Title IX investigation.

28

111. As a result of changing Plaintiff Jane Doe's classes, her new schedule and teachers were as follows: Truck Engines: Defendant Diesel Instructor Wilson; Street Law: Terry Snyder; Lunch; Advisory 1: Defendant Diesel Instructor Wilson; English 12: Defendant English Instructor King; Environmental Science: Summer Priest; BA Algebra II: Defendant Instructor Atherton.

112. As a result of moving Plaintiff Jane Doe's English class, for nearly a month Plaintiff Jane Doe attended new English class where she had to teach herself because Defendant English Instructor King's class was studying a different book than her previous class with Kathryn Simmons. Plaintiff Jane Doe had been studying Shakespeare's *Comedy of Errors* in her previous English class and was asked to continue working on reading Shakespeare independently, while the other students in her new class studied a different book.

113. In addition, Plaintiff Jane Doe had been moved to a new science class and for approximately a week, she attended an upper level math class where she didn't understand the material and received no IEP accommodations. Once the teacher found out about Plaintiff Jane Doe's disability as outlined in her IEP, the teacher worked to move Plaintiff Jane Doe into the appropriate math class.

114. While her schedule was being changed, Plaintiff Jane Doe lost over a week of learning, which resulted in lost interest and lost educational instruction.

115. On October 9, 2019, Plaintiff Mary Doe requested a copy of Plaintiff Jane Doe's updated IEP via email, and was told that a copy would come home with Plaintiff Jane Doe from school that day.

116.   On October 9, 2019, Defendant Director Ramey sent home a Family Educational Rights and Privacy Act release under the context of speaking with advocates/attorneys on behalf of Plaintiff Jane Doe.

117.   Later in the day on October 9, Plaintiff Jane Doe was called to Defendant School Counselor Gonglik's office despite having been denied access to her counselor earlier in the day regarding the schedule change. Present in the room were Defendant School Counselor Gonglik, Defendant Director Ramey, and a school advocate. At that time, Plaintiff Jane Doe was given the No Contact Order paperwork that demanded that Plaintiff Jane Doe stay away from Minor Student 1, rather than demanding that Minor Student 1 stay away from her.

118.   Even later on October 9, 2019, Defendant Director Ramey denied in an email that she limited Plaintiff Jane Doe's access to counseling by Defendant School Counselor Gonglik.

119.   On October 9, 2019, an appeal meeting between the school and parents was scheduled for October 16, 2019.

120.   On October 10, Plaintiff Jane Doe attempted to comply with Defendant Director Ramey's instruction to sit in the front seat of the bus, but Minor Student 1 was already sitting in that seat, and he proceeded to verbally assault Plaintiff Jane Doe on the bus, telling everyone that he has a No Contact Order against Plaintiff Jane Doe and that she is "crazy."

121.   Because of this harassment, Plaintiff Jane Doe moved to a different seat on the bus in an attempt to get away from Minor Student 1 on October 10, 2019.

122. After arriving at school on October 10, 2019, Plaintiff Jane Doe attempted to tell a teacher or administrator that she was still being harassed by Minor Student 1, but not a single teacher or administrator listened to her or attempted to rectify the abuse.

123. On October 10, 2019, Defendant Director Ramey sent an email to Plaintiff Mary Doe and Plaintiff Jane Doe, cancelling their scheduled meeting and communicating that she had no intention of interviewing Plaintiff Jane Doe again.

124. In the October 10, 2019, email follow-up, Defendant Director Ramey "gently reminded" everyone that they should not be talking about the situations that pertain to the investigation and asserted as fact that a student witness to the investigation told her that Plaintiff Jane Doe was discussing the matter. Plaintiff Jane Doe had no opportunity to respond.

125. In the October 10, 2019, follow-up email, Defendant Director Ramey stated that both Plaintiff Jane Doe and Minor Student 1 were given a No Contact Order in an effort to protect both parties, and that she will follow up with the bus coordinator and the bus driver about the morning bus ride. She claims that both students were notified of the No Contact Order.

126. In response to that October 10, 2019, email, Plaintiff Mary Doe asked why Defendant Director Ramey had not responded to Plaintiff Jane Doe's attorney in regard to a 12 noon meeting scheduled for that day, and reiterated that Defendant Director Ramey was not to speak with Plaintiff Jane Doe without her attorney present. Plaintiff Mary Doe also notified Defendant Director Ramey of the harassment Plaintiff Jane Doe experienced on the morning bus ride and that Minor Student 1 was using the No Contact Order as a weapon to further bully, harass, and terrorize Plaintiff Jane Doe.

127. In her response to the same October 10, 2019, email, Plaintiff Mary Doe also stated that she would sign the necessary documents for the administrators to be released to speak with Plaintiff Jane Doe's advocate, Shilo Gall, and asked for the updated copy of Plaintiff Jane Doe's IEP that she requested the previous day, which she had not yet received.

128. On October 11, 2019, approximately ten students stood in a circle at the bus stop harassing and making fun of Plaintiff Jane Doe, who was feeling deeply defeated.

129. On October 14, 2019, one of Minor Student 1's friends in Defendant Diesel Instructor Wilson's class told Plaintiff Jane Doe he knows she has "bathroom AIDS," and refused to give his name when Plaintiff Jane Doe asked, saying, "why? because you want to have sex with me?"

130. On October 14, 2019, Plaintiff Jane Doe is asked to show a new student around Defendant Diesel Instructor Wilson's class. John Roe #29 began to verbally assault her, asking if she plans to give the new guy a "quickie" in the bathroom and then stating, "I wouldn't touch that. It's nasty." The verbal assault continued while she tried to show the new student around, and no one intervened on her behalf. Despite Defendant Diesel Instructor Wilson's actual knowledge of these comments, Defendant Diesel Instructor Wilson failed and refused to take any action to report the conduct or to stop it.

131. On or about October 14, 2019, unknown students verbally assaulted Plaintiff Jane Doe in the hallways, saying, "I hope you get pregnant," "you are filthy," and calling her a "slut" and a "whore", while openly claiming that she had an "STD".

132. On or about October 14, 2019, Plaintiff Jane Doe told her parents that it doesn't do any good to tell the teachers or the guidance counselor, they aren't doing anything to protect or help her.

133. On October 16, 2019, Defendant Director Ramey canceled the appeal meeting regarding Plaintiff Jane Doe's Suspension #1 and rescheduled it for November 4, 2019.

134. On October 17, 2019, Plaintiff Jane Doe told her mother that she was going to request to get out of Defendant Diesel Instructor Wilson's class. The students were continuing to verbally assault her there and Defendant Diesel Instructor Wilson did nothing. She then decided against asking Defendant School Counselor Gonglik for assistance because the administrators were not helping her and she felt they would not do anything.

135. On or about October 17, 2019, Plaintiff Jane Doe requested help from several staff members to help her with the continuing verbal assaults and harassment from students, and not one teacher or administrator attempted to help.

136. On October 21, 2019, Plaintiff Jane Doe was told by Defendant Director Ramey to stop asking staff for help, advising her further that they could not do anything because it was part of a Title IX investigation.

137. On or about October 22, 2019, sexual harassment from Minor Student 1 continued when he violated the No Contact Order, but because Plaintiff Jane Doe had been told she can't tell anyone, she did not report his violation.

138. On October 23, 2019, Plaintiff Jane Doe's attorney began the proceedings to obtain a Civil Protection Order against Minor Student 1, and requested Plaintiff Jane Doe's school records.

139. On or about October 24, 2019, the constant barrage of bullying and sexual harassment has taken a toll on Plaintiff Jane Doe, and according to Plaintiff Mary Doe, Plaintiff Jane Doe has lost her will to live, and all she does is sleep and cry.

140. On October 30, 2019, Plaintiff Jane Doe asked whether she could attend the Shakespeare unit field trip see a live Shakespeare performance of the play she had been studying, *Comedy of Errors* ("Shakespeare Field Trip"), since she had continued to work on that play despite her class schedule change. However, Plaintiff Jane Doe was denied the opportunity to attend the previously planned Shakespeare Field Trip because Minor Student 1 was attending. Plaintiff Jane Doe was crushed as she had worked diligently on the challenge of reading Shakespeare on her own, and felt as though she had achieved some success, and the Shakespeare Field Trip was supposed to be her reward.

141. On October 30, 2019, Plaintiff Jane Doe attempted to talk to Defendant School Counselor Gonglik about the Shakespeare Field Trip but was refused, as Defendant School Counselor Gonglik told Plaintiff Jane Doe that she could not talk about Minor Student 1 unless Defendant Director Ramey and Defendant Special Ed Coordinator Harrington were present, and only allowed ten minutes of her time.

142. On October 30, 2019, Plaintiff Jane Doe requested assistance from Defendant Instructor Atherton regarding a math lesson that Plaintiff Jane Doe did not understand. Defendant Instructor Atherton told Plaintiff Jane Doe to copy answers from a classmate. Defendant Instructor Atherton provided Plaintiff Jane Doe with no additional instruction, and did not assist Plaintiff Jane Doe with access to the school web-based learning tool.

143. On October 30, 2019, during Defendant Diesel Instructor Wilson's Diesel Class, Minor Student 2 and Plaintiff Jane Doe met in the First Tool Crib and talked. Plaintiff Jane Doe believed that Minor Student 2 was being kind and friendly with her. He said that he would be Plaintiff Jane Doe's friend and would be there for her if she needed anything. Later he asked her to meet in the "other tool shed" or the Second Tool Crib which is further away and dark inside. Once there, Minor Student 2 kissed Plaintiff Jane Doe. Plaintiff Jane Doe said, "We have to go back to our motors." Minor Student 2 pushed Plaintiff Jane Doe hard against the cement wall, hurting her head, then grabbed her by the throat while showing his teeth, and told her to suck his cock and use her hand. Minor Student 2 raped Plaintiff Jane Doe during Defendant Diesel Instructor Wilson's class both vaginally and anally ("Rape #2")

144. Rape #2 of Plaintiff Jane Doe was a direct and proximate result of the sexual harassment, abuse, and rape culture Ohio Hi-Point Defendants created, encouraged, and fostered, as well as Defendant Diesel Instructor Wilson's complete and total lack of supervision despite his actual knowledge of the daily, ongoing bullying and sexual harassment leveled at Plaintiff Jane Doe during his classes.

145. As a direct and proximate result of Rape #2, Plaintiff Jane Doe suffered injuries and aggravation of previous injuries to her body from Rape #1, including without limitation injuries to her vagina, anus, rectum, face, hair, scalp, neck, back, chest, breasts, belly, arms, legs, skin, bruises, lacerations, deep bleeding, and other parts of her body, causing trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, and inability to perform ordinary activities.

146.    As a direct and proximate result of her injuries from Rape #2, Plaintiff Jane Doe has incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

147.    On October 31, 2019, Plaintiff Jane Doe was physically threatened during school by Judy Roe #30, Judy Roe #31, Judy Roe #32, and Judy Roe #33 that they would "punch [Plaintiff Jane Doe] in the fucking face," and verbally attacked her, calling her, "horse," "whore," "sloppy seconds," and "bathroom whore" ("Physical Threat/Verbal Attack").

148.    During the October 31, 2019, Physical Threat/Verbal Attack, a teacher pulled Plaintiff Jane Doe out of the mix and began to discipline her, while saying nothing to the four girls who perpetrated the Physical Threat/Verbal Attack. Defendant Diesel Instructor Wilson was aware of the Physical Threat/Verbal Attack and did nothing to help Plaintiff Jane Doe following the Physical Threat/Verbal Attack.

149.    After the October 31, 2019, Physical Threat/Verbal Attack, Plaintiff Jane Doe asked Defendant Diesel Instructor Wilson if she could go see Defendant School Counselor Gonglik. Defendant Diesel Instructor Wilson denied her request, but stated she could call Defendant School Counselor Gonglik on the classroom phone. Plaintiff Jane Doe called and asked Defendant School Counselor Gonglik if she can see her now. Defendant School Counselor Gonglik asked if it was a matter of life or death, to which Plaintiff Jane Doe replied, "kind of, I didn't know how to answer that." Defendant School Counselor Gonglik said she had meetings all day but that Plaintiff Jane Doe could come and see her at the end of the day.

150.    On October 31, 2019, after the Physical Threat/Verbal Attack and after being denied an opportunity to report it by Defendant Diesel Instructor Wilson and

Defendant School Counselor Gonglik, Plaintiff Jane Doe asked to be excused from class, went to the bathroom, called her mother and begged Plaintiff Mary Doe to pick her up from school.

151.    On October 31, 2019, Plaintiff Mary Doe signed out Plaintiff Jane Doe from school and immediately went to the Logan County Sheriff Department to fill out a report of the Physical Threat/Verbal Attack incident.

152.    On October 31, 2019, Defendant Director Ramey sent Plaintiff Jane Doe an email about a conduct violation, stating she was unable to discuss it with her because of her leaving early but stated they would have a meeting first thing the next morning.

153.    On Friday, November 1, 2019, a group of four students, Friend A, Friend B, Friend C, and Friend D, went to Defendant Director Ramey and asked to discuss the sexual and verbal harassment and bullying that they had observed happening to Plaintiff Jane Doe, but Defendant Director Ramey refused to hear their concerns and told them to come back on Monday.

154.    On Sunday, November 3, 2019, Plaintiff Mary Doe sent an email to Defendant Director Ramey reporting the Physical Threat/Verbal Attack by the four girls, asking Defendant Director Ramey why Plaintiff Jane Doe's classes were changed rather than the classes of the perpetrator of Rape #1, Minor Student 1, and asking why the four students were turned away by Defendant Director Ramey when they approached her to make their report. Defendant Director Ramey did not answer that email until November 7, 2019.

155.    On the morning of Monday, November 4, 2019, Defendant Director Ramey met Plaintiff Jane Doe at the school building door and questioned her for over an hour without any other adult or support person in the room, despite previous requests that

such discussions occur only in the presence of Plaintiff Jane Doe's parents, advocate, and/or attorney. During this meeting, despite Defendant Director Ramey's actual knowledge of Plaintiff Jane Doe's diminished capacity to understand due to her documented disability, upon information and belief Defendant Director Ramey coerced Plaintiff Jane Doe to change her report of Rape #2 and forced Plaintiff Jane Doe to sign a document that Plaintiff Jane Doe did not understand ("Coerced Statement").

156. On November 4, 2019, the four students Friends A–D returned to Defendant Director Ramey's office and requested a meeting to discuss the bullying and harassment of Plaintiff Jane Doe they had witnessed, but they were again turned away by Defendant Director Ramey.

157. On November 4, 2019, Defendant Director Ramey told Plaintiff Jane Doe that she was assigning Defendant Special Ed Coordinator Harrington to stay with Plaintiff Jane Doe throughout the day and act as her defense in the hallways as Plaintiff Jane Doe moved about the school building.

158. On November 4, 2019, Plaintiff Jane Doe was viciously harassed by a fellow student in Defendant Diesel Instructor Wilson's engines class, John Roe #5 threatened Plaintiff Jane Doe that he was going to break her jaw, said, "fuck you", and told her to "eat his ass", all of which was heard and ignored by Defendant Diesel Instructor Wilson.

159. Also on November 4, 2019, while in her Street Law class with Defendant Special Ed Coordinator Harrington a student loudly called Plaintiff Jane Doe a "whore", causing all the students to laugh, while Defendant Special Ed Coordinator Harrington acted as if she had not heard them.

160. On November 4, 2019, Defendant Director Ramey refused to allow Plaintiff Jane Doe to use the restroom on her own, telling her that Defendant Director Ramey needed to check it to make sure there wasn't anyone in there before Plaintiff Jane Doe could go in. Defendant Director Ramey proceeded to make a show of checking all the bathroom stalls in front of other students, then, after ensuring all the stalls were clear, allowed Plaintiff Jane Doe to use the restroom. While Plaintiff Jane Doe was inside one of the restroom stalls, and in front of other students, Defendant Director Ramey opened the restroom door and yelled loudly, as a show for other students, "ARE YOU OK IN THERE?" which was deeply embarrassing to Plaintiff Jane Doe and served to further ostracize her from her fellow students.

161. Following that event on November 4, 2019, Plaintiff Jane Doe left school early because she was experiencing severe mental and emotional distress. Throughout the previous two months, Plaintiff Jane Doe had stopped eating and drinking regularly, and was down to 89 pounds. She was pulling her hair out of her head and had bald patches, picking at her face, and had dark circles under her eyes and her complexion was grey as a result of the extreme mental and emotional distress.

162. On the afternoon of November 4, 2019, a meeting was conducted by an attorney for Ohio Hi-Point Defendants, Defendant Superintendent Smith, Defendant Director Ramey, Defendant Special Ed Coordinator Harrington, and others, as well as Plaintiff Jane Doe, Plaintiff Mary Doe, and Plaintiff Dan Doe ("November 4 Meeting").

163. During the November 4 Meeting, Defendant Director Ramey showed Plaintiffs Jane Doe, Mary Doe, and Dan Doe a grainy, unclear video of what was said to be Plaintiff Jane Doe consensually kissing a boy, Friend A.

164. During the November 4 Meeting the attorney for Ohio Hi-Point Defendants, immediately after hearing Plaintiff Jane Doe sobbing about the bullying, harassment, threats, and sexual assaults she had suffered at school, gaslighted Plaintiffs by saying the school could not do anything about the bullying and abuse if Plaintiff Jane Doe did not report it, thereby perpetrating a false narrative that Plaintiff Jane Doe did not report the ongoing harassment and abuse prior to September 30.

165. During the November 4 Meeting, Defendant Director Ramey acknowledged that Plaintiff Jane Doe told the Ohio Hi-Point School Resource Officer three times that Minor Student 1 was sexually harassing Plaintiff Jane Doe, and each time the School Resource Officer referred Plaintiff Jane Doe to Defendant Dean of Students Cook.

166. During the November 4 Meeting, Defendant Director Ramey further acknowledged that the Ohio Hi-Point Resource Officer was aware that Minor Student 1, who had been consistently and continuously sexually harassing Plaintiff Jane Doe, had also raped her.

167. Following the November 4 Meeting, Plaintiff Jane Doe became ill with a severe panic attack and needed to be rushed to the hospital emergency room, where she would finally begin to receive medical care from her injuries resulting from Rape #1 and Rape #2.

168. Following the November 4 Meeting, Defendant Director Ramey and Defendant Dean of Students Cook used Plaintiff Jane Doe's Coerced Statement to justify imposing sanctions against Plaintiff Jane Doe in the form of a second 5-day suspension ("Suspension #2"), which was set to begin the next day, November 5, 2019, and continued until November 9, 2019; Plaintiff Jane Doe never returned to school after the Second Suspension.

40

169. On November 7, 2019, Defendant Director Ramey responded to the email sent by Plaintiff Mary Doe on November 3, 2019, stating that she could not discuss what was happening because of the ongoing Title IX investigation, that Plaintiff Jane Doe was removed from her classes for her own protection, and that Plaintiff Jane Doe needed to bring any additional information about the investigation forward by the next day, November 8, 2019.

170. On November 8, 2019, Defendant Director Ramey requested a conference call to discuss changing Plaintiff Jane Doe's program prior to her returning to school following the Second Suspension, but Plaintiff Jane Doe was not able to participate on that call, as any mention of Defendant Director Ramey, the attorney, or the situation at school began to cause Plaintiff Jane Doe to experience panic attacks.

171. On the evening of November 9, 2019, and into November 10, 2019, Plaintiff Jane Doe was taken to see a Sexual Assault Nurse Examiner (SANE) nurse at Marion General Hospital in Marion, Ohio.

172. On November 10, Plaintiff Jane Doe suffered another panic attack after again being approached about having a conference call with Defendant Director Ramey.

173. On November 10, 2019, Plaintiff Jane Doe began suffering from dark urine and back pain, prompting Plaintiff Mary Doe to call the hospital.

174. On November 11, 2019, Defendant Director Ramey reached out again to Plaintiff Jane Doe via email requesting additional information about the assaults, her program change, and attempting to discuss her missing work.

175. On November 11, 2019, Plaintiff Mary Doe responded to Defendant Director Ramey's emails and pointed out the Ohio Hi-Point Defendants' complete disregard for Plaintiff Jane Doe's health issues and the ongoing sexual harassment situation.

176.   On the afternoon of November 11, 2019, Plaintiff Mary Doe and Plaintiff Jane Doe presented to Mary Rutan Hospital emergency room. As a direct and proximate result of Plaintiff Jane Doe's ongoing panic attacks, injuries from Rape #1 and Rape #2, and severe mental and emotional distress from the bullying, harassment, sexual assault, abuse, and the failure of Ohio Hi-Point Defendants to address the reports of abuse in any meaningful way, Plaintiff Jane Doe received a school excuse to remain out of school on medical leave through November 19, 2019, which was extended multiple times to eventually include a medical leave for the entire rest of the 2019-2020 school year.

177.   On November 13, 2019, Defendant Director Ramey again emailed Plaintiff Jane Doe directly stating the same information that had been in previous emails.

178.   On November 17, 2019, Plaintiff Jane Doe gave her statement to a detective concerning Rape #1, as a result of the Marion General Hospital's SANE nurse reporting that rape to the proper authorities.

179.   On November 20, 2019, Defendant Special Ed Coordinator Harrington reached out in regard to scheduling an IEP meeting, and generated a PR-02 for the IEP meeting.

180.   On November 20, 2019, Defendant Director Ramey requested that Student A reach out to Plaintiff Jane Doe to get evidence of Minor Student 1 harassing her, and again emailed Plaintiff Jane Doe regarding where to pick up her missed work.

181.   On November 20, 2019, Bellefontaine City School's psychologist Emily Boyne emailed Plaintiff Jane Doe and Plaintiff Mary Doe requesting them to sign off on allowing Ohio Hi-Point Defendants to use records to re-evaluate Plaintiff Jane Doe's IEP rather than conducting a new evaluation, acknowledging that Plaintiff Jane Doe

was out on medical leave but requesting to go forward with the IEP re-evaluation anyway.

182. On December 2, 2019, Defendant Director Ramey emailed Plaintiff Jane Doe and Plaintiff Mary Doe the dates of end of year testing and how to reschedule if needed.

183. On December 3, 2019, Student A sent a message to Plaintiff Jane Doe telling her that the kids were all still talking badly about her at school, and Plaintiff Mary Doe worried that Plaintiff Jane Doe would have another anxiety attack, as she was not doing well.

184. On December 4, 2019, Student A continued to reach out to Plaintiff Jane Doe, reiterating how the kids are still talking badly about her, telling her that Defendant Director Ramey said she would fix the bullying but hasn't, and Plaintiff Jane Doe needed to break away from the conversation because she was not feeling well.

185. On December 5, 2019, a PR-02 parent invitation was generated by Psychologist Boyne inviting Plaintiff Jane Doe and Plaintiff Mary Doe to an IEP meeting on December 12, 2019, where they would also assess Plaintiff Jane Doe's eligibility for services as a child with a disability.

186. On December 10, 2019, Defendant Superintendent Smith sent an email with the findings of the Title IX investigation to Plaintiff Jane Doe and Plaintiff Mary Doe, which stated that the investigation had found insufficient evidence in any of the four Title IX complaints that Plaintiff Jane Doe had made.

187. On December 12, 2019, the IEP meeting for Plaintiff Jane Doe went forward at 12p without any input from Plaintiff Jane Doe or Plaintiff Mary Doe.

188. On December 19, 2019, Defendant Special Ed Coordinator Harrington emailed Plaintiff Jane Doe and Plaintiff Mary Doe in regard to the December 12, 2019, IEP

meeting, stating that the meeting was held in an effort to maintain IEP compliance, requesting that Plaintiff Jane Doe and Plaintiff Mary Doe sign the signature documents confirming and agreeing with the IEP, and encouraging Plaintiff Jane Doe to accept home instruction from Defendant Bellefontaine City schools even though Plaintiff Jane Doe was still out on medical leave from school.

189. On January 3, 2020, Defendant Director Ramey sent an email to Plaintiff Jane Doe and Plaintiff Mary Doe regarding return to school work and dates, and referenced the IEP meeting that happened December 12, 2019.

190. On February 5, 2020, Defendant Special Ed Coordinator Harrington sent Plaintiff Jane Doe and Plaintiff Mary Doe an email stating she would like to schedule an IEP update meeting to accommodate Plaintiff Jane Doe's educational needs that have changed due to her being out on medical leave.

191. On February 25, 2019, Plaintiff Mary Doe had a conversation with Defendant Director Ramey and Defendant Special Ed Coordinator Harrington asking them specifically to stop contacting them while Plaintiff Jane Doe was out on medical leave.

192. On February 25, 2019, a PR-01 and a PR-02 was generated inviting Plaintiff Jane Doe and Plaintiff Mary Doe to a face to face meeting at Ohio Hi-Point Career Center on March 2, 2020, at 1:30p.

193. On February 26, 2020, Defendant Special Ed Coordinator Harrington emailed Plaintiff Jane Doe and Plaintiff Mary Doe requesting them to attend an IEP reevaluation meeting (PR-02) on March 2, 2020, at 1:30pm.

194. On March 2, another IEP meeting was held without input from Plaintiff Mary Doe or Plaintiff Jane Doe, during which the team made a recommendation for Plaintiff

Jane Doe to withdraw from Ohio Hi-Point Career Center and enroll in one of three options through Bellefontaine City Schools.

195. On March 17, 2019, Plaintiff Mary Doe emailed again in regard to the constant barrage of communication, stating that she had received 133 emails, 34 text messages, and over 20 phone calls since February 25, 2020, when she asked them to cease communication.

196. On March 18, 2020, Defendant Director Ramey responded to the email, reiterating that the IEP recommendation is to withdraw Plaintiff Jane Doe and included withdrawal paperwork. Defendant Director Ramey advised that if Plaintiff Jane Doe would withdraw from school, the communications would stop.

197. In her email of March 18, 2020, Defendant Director Ramey acknowledged the barrage of communication and blamed it on the pandemic caused by the COVID-19 virus, and stated that she will communicate to all teachers and staff that they are no longer to communicate with Plaintiff Jane Doe or Plaintiff Mary Doe.

198. On April 30, 2020, despite the promises of no further contact by Defendant Director Ramey, Plaintiff Jane Doe received emails from two people from Ohio Hi-Point Career Center, including Defendant Supervisor Lang.

199. On May 31, 2020, Plaintiff Jane Doe received a private Facebook message from her Street Law teacher, Mr. Snyder, at 9:05p, stating he had been thinking about her and wanted to check in.

200. Plaintiff Mary Doe intercepted the message and asked why he was contacting Plaintiff Jane Doe, to which Mr. Snyder replied that he checks on all his past students.

201. On August 3, 2020, Plaintiff Dan Doe called Ohio Hi-Point Career Center to request the school records of Plaintiff Jane Doe so that she could enroll in school for the 2020-2021 school year.

202. On August 4, 2020, Defendant Superintendent Smith called Plaintiff Dan Doe while at work and told him that Plaintiff Jane Doe must request her records herself because she is 18.

203. On August 4, 2020, Plaintiff Jane Doe called Ohio Hi-Point Career Center and requested her own school records.

204. On August 4, 2020, Defendant Superintendent Smith returned Plaintiff Jane Doe's call and stated that she had until 2p to pick up her records that same day, despite the fact that her family did not have access to a car at that time.

205. On August 4, 2020, Defendant Superintendent Smith called Plaintiff Jane Doe and stated that he would personally deliver her school records to her home that day.

206. On August 4, 2020, as Defendant Superintendent Smith approached the Doe home, he sat in the driveway for an extended period of time, failed to wear a mask when approaching the house notwithstanding a statewide mask order due to the global COVID-19 pandemic, and used his foot to force the door open while he dropped the records off. Plaintiff Jane Doe experienced an anxiety attack with vomiting and inconsolable sobbing because of Defendant Superintendent Smith's callous and inconsiderate interaction.

## OHIO HI-POINT DEFENDANTS'
## FAILURE TO FOLLOW THEIR OWN POLICY
## REGARDING SEXUAL VIOLENCE AND BULLYING

207.    Ohio Hi-Point Defendants' Policy Manual is written as a series of mandatory duties that district employees must fulfill in response to complaints of sexual violence, harassment, intimidation, or bullying of students.

208.    These duties include: designating individuals to serve as "Anti-Harassment Compliance Officers" who are to be available during regular school/work hours to discuss Title IX questions; an obligation to provide a safe and non-discriminatory environment for all students; the duty to report acts of sexual violence, harassment, intimidation, or bullying promptly; the duty to investigate and address all reports of sexual violence, harassment, intimidation, or bullying; the duty to report acts of sexual violence, harassment, intimidation, or bullying to parents; the duty to report criminal acts or child abuse to the proper authorities; the duty to develop strategies against continued sexual violence, harassment, intimidation, or bullying against students; the duty to impose appropriate discipline against perpetrators of sexual violence, harassment, intimidation, or bullying; and the duty to notify victims of sexual violence, harassment, intimidation, or bullying that retaliation against the victim is strictly prohibited and to direct the victim to report retaliation.

209.    Ohio Hi-Point Defendants' Policy Manual states, "the Board has zero tolerance of violent, disruptive or inappropriate behavior by its students."

210.    Defendant Ohio Hi-Point School District Board of Education's Policy Manual states as follows:

> Harassment, intimidation, or bullying toward a student, whether by other students, staff, or third parties is strictly prohibited and will not be tolerated. This prohibition includes aggressive behavior, physical, verbal, and psychological

abuse, and violence within a dating relationship. The Board will not tolerate any gestures, comments, threats, or actions which cause or threaten to cause bodily harm or personal degradation.

Sexual harassment, including sexual violence, interferes with students' rights to receive an education free from discrimination, and, in the case of sexual violence, is a crime. Pursuant to its Title IX obligations, the Board is committed to eliminating sexual violence in all forms and will take appropriate action against any individual found responsible for violating this policy.

211. Under the policy, the definition of sexual harassment states, "sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

212. Under the policy, "sexual violence includes rape, sexual assault, sexual battery, sexual abuse, and sexual coercion. Sexual violence can be carried out by school employees, other students, or third parties. All such acts of sexual violence are forms of sexual harassment and, in turn, sex discrimination prohibited by Title IX."

213. Under the policy, the definition of harassment, intimidation, or bullying means, "any intentional written, verbal, graphic, electronic, or physical acta that a student or group of students exhibits toward another particular student more than once and the behavior both causes mental or physical harm to the other student and is sufficiently severe, persistent, or pervasive that it creates an intimidating, threating, or abusive educational environment for the other student."

214. Every staff member is required to report any situation that they believe to be aggressive behavior directed toward a student and to report sexual violence promptly to a teacher, administrator, supervisor, or other school official. "If a Complainant informs a teacher, Director, or other District employee at the students' school, Superintendent, or other District employee, either orally or in writing, about any

complaint of harassment, that employee must report such information to the Compliance Offer or designed within two (2) business days."

215. The District is required to investigate and address all reports. Any school staff member or administrator who receives a complaint shall promptly document the complaint in writing, including the information provided. "Throughout the course of the process, the Compliance Officer should keep the parties informed of the status of the investigation and the decision-making process."

216. The policy states that disciplinary action will be imposed on individuals engaging in "disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties."

217. No employee or administrator at Ohio Hi-Point Career Center offered Plaintiff Jane Doe any suggestions on how to handle the bullying, sexual harassment, and intimidation, nor did anyone provide information about bullying, nor did they offer her counseling to deal with the bullying, sexual harassment, and intimidation.

218. Defendant Director Ramey never provided her report of any investigation regarding the sexual harassment, intimidation, or bullying of Plaintiff Jane Doe, nor were any Plaintiffs provided with written materials used in the investigation. The only report provided to Plaintiffs was a report written by Defendant Superintendent Smith on December 10, 2019, which purported to adopt "Investigator Ramey's findings and conclusions" and sating that there was "insufficient evidence" of a violation of school policies on anti-harassment.

## OHIO HI-POINT DEFENDANTS' PATTERN AND PRACTICE OF FAILING TO PROPERLY RESPOND TO REPORTS OF SEXUAL VIOLENCE, HARASSMENT, INTIMIDATION, AND BULLYING

219. In addition to Plaintiff Jane Doe, other Ohio Hi-Point Career Center students were also bullied, sexually harassed, and intimidated, with the actual knowledge of Ohio Hi-Point Defendants, who failed to appropriately respond to end those practices and protect the victims.

220. Upon information and belief, Friend B also experienced bullying, sexual harassment, and intimidation, which she reported to Defendant Director Ramey and/or other Ohio Hi-Point Defendants, but no action was taken to protect Friend B or to make the misconduct stop.

221. Upon information and belief, no employee or administrator at Ohio Hi-Point Career Center offered Plaintiff Jane Doe or Friend B any suggestions on how to handle the bullying, harassment, and intimidation, nor did anyone provide information about bullying, nor did they offer counseling to deal with the bullying, harassment, and intimidation.

222. Ohio Hi-Point Defendants, individually and acting together, created a custom and practice of refusing to enforce their own policies, thereby creating a culture of sexual harassment, assault, battery, and rape culture that lead to the ongoing, unrelenting sexual harassment and violence against Plaintiff Jane Doe and others.

## COUNT I

## VIOLATION OF U.S. CONSTITUTION AMENDMENT XIV
## DENIAL OF SUBSTANTIVE DUE PROCESS

223. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

224. The actions of the Hi-Point Defendants constitute a violation of Plaintiffs' constitutional rights under the Substantive Due Process Clause of the Fourteenth Amendment.

225. These rights include Plaintiff Jane Doe's right to life, liberty, familiar relationship, education, and freedom from government actions that shock the conscience, as well as the right of Plaintiffs Dan, Mary, and Jenny Doe to the familiar relationship, companionship, care, custody, and management of their daughter/sister.

226. Ohio Hi-Point Defendants had actual knowledge that the sexual violence, harassment, intimidation, and bullying Plaintiff Jane Doe suffered was so severe that it deprived her of the rights, privileges, or immunities secured by the Substantive Due Process clause of the Fourteenth Amendment.

227. Ohio Hi-Point Defendants had sufficient time to deliberate and decide upon a proper course of action in response to the sexual violence, harassment, intimidation, and bullying of Plaintiff Jane Doe, and other wrongs suffered by Plaintiff Jane Doe. Ohio Hi-Point Defendants were not required to act in haste.

228. Ohio Hi-Point Defendants' actions and omissions, in failing to intervene on behalf of Plaintiff Jane Doe, were so reprehensible that it is shocking to the conscience or outrageous, and violative of Plaintiffs' substantive due process rights.

229. The practices, policies, and/or customs of Ohio Hi-Point Defendants for responding to such sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination were so clearly unreasonable in light of known circumstances s to give rise to a reasonable inference that each of the Hi-Point Defendants intended for these events to occur, or were deliberately and callously indifferent to their occurrence, or were grossly negligent or reckless in permitting them to occur.

230. The affirmative acts and omissions of the Ohio Hi-Point Defendants created a risk and/or increased the risk that Plaintiff Jane Doe would be exposed to sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination by other Ohio Hi-Point Career Center students including without limitation Minor Student 1, Minor Student 2, and John/Judy Roes #11-33.

231. Because Plaintiff Jane Doe faced special and specific dangers of being bullied, sexually harassed, assaulted/battered, and discriminated against by Ohio Hi-Point Career Center students (particularly Minor Students 1-2), Ohio Hi-Point Defendants' actions and omissions created a risk and/or placed Plaintiff Jane Doe specifically at risk.

232. Ohio Hi-Point Defendants knew or should have known that their actions and omissions created a danger and/or specifically endangered Plaintiff Jane Doe, including without limitation:

   a. The repeated decisions of Ohio Hi-Point Defendants to take no action to address the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination of Plaintiff Jane Doe, as reported by Plaintiff Jane Doe, Plaintiff Mary Doe, Plaintiff Dan Doe, Friend A, Friend B, Friend C, and Friend D;

b. Their repeated failure to complete reports of each complaint of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe and others;

c. Their complete and utter refusal to address a single instance of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination when it was occurring right in front of certain Defendants, during class;

d. Their repeated refusals to investigate or discipline Minor Student 1, despite their actual knowledge of his identity and their knowledge that any remedial action they had taken was ineffective;

e. Their failure to conduct a proper investigation and take into account Plaintiff Jane Doe's experience during Rape #2, instead coercing her to sign a document she did not understand which purportedly, upon information and belief, admitted to engaging in consensual sexual activity that was not true, and forcing her to endure discipline in the form of Suspension #2 for "having sex" when in fact she had endured criminal sexual violence against her.

233. Ohio Hi-Point Defendants' actions and omissions reflect their toleration of a widespread policy, practice, or custom of failing to adequately respond to sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination so as to safeguard the constitutionally protected rights of students.

234. This policy, practice, or custom condoned, fostered, encouraged, and tacitly approved of the unconstitutional response and lack of response of Ohio Hi-Point Defendants to bullying, harassment, and assault/battery taking place in the Ohio Hi-Point Career Center, and directly and proximately caused the violation of Plaintiff Jane Doe's constitutional rights.

235. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and

completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

236. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

237. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT II

## VIOLATION OF TITLE IX OF THE CIVIL RIGHTS ACT OF 1964, 20 USC §1681 SEX DISCRIMINATION

238. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

239. Plaintiff Jane Doe suffered harassment on the basis of her gender, sex stereotyping, her perceived sexual orientation, and her perceived sexual practices/promiscuity, while attending Ohio Hi-Point Career Center.

240. The harassment was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the school.

241. This harassment was reported to Ohio Hi-Point Defendants and Ohio Hi-Point Defendants had actual knowledge of the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination Plaintiff Jane Doe suffered.

242. Ohio Hi-Point Defendants' response to these reports was deliberately indifferent in that it was clearly and objectively unreasonable in light of the known circumstances.

243. Furthermore, Ohio Hi-Point Defendants' actions and omissions, in failing to respond to these reports and intervene on behalf of Plaintiff Jane Doe, were so reprehensible that it is shocking to the conscience or outrageous.

244. Ohio Hi-Point Defendants knew or should have known that any actions they had taken in response to the harassment were inadequate and ineffective.

245. Ohio Hi-Point Defendants thus violated Plaintiff Jane Doe's right to be free from discrimination on the basis of sex in federally funded education programs and activities in violation of Title IX, 20 U.S.C. §1681.

246. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and has suffered further harassment and was made vulnerable to further harassment on the basis of sex, and was deprived of her access to the educational opportunities and benefits that the school provided, and was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

247. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

248. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT III

### UNLAWFUL POLICY, PRACTICE, OR CUSTOM IN FAILING TO RESPOND TO SEXUAL VIOLENCE, HARASSMENT, INTIMIDATION, BULLYING, ASSAULT/BATTERY, AND DISCRIMINATION

### 42 U.S.C. § 1983 – *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)

249.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

250.     This cause of action is brought pursuant to 42 U.S.C. §1983.

251.     Ohio Hi-Point Defendants violated their obligations to maintain lawful policies and procedures pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and also pursuant to R.C. §2307.44, §3313.666(B), and §3313.534.

252.     The actions and omissions of Ohio Hi-Point Defendants reflect their toleration of a widespread policy, practice, or custom of failing to adequately respond and/or negligently responding to sexual violence, harassment, intimidation, bullying, assault/battery, rape, and discrimination so as to safeguard the constitutionally protected rights of students.

253.     This policy, practice, or custom condoned, fostered, encouraged, acquiesced in and tacitly approved of the unconstitutional response, and lack of response, of Ohio Hi-Point Defendants to bullying, harassment, and assault/battery taking place in the Ohio Hi-Point Career Center.

254.     This policy, practice, or custom was the moving force behind the violations of Plaintiff Jane Doe's constitutional and federally protected rights.

255.     Ohio Hi-Point Defendants were deliberately and callously indifferent, or grossly negligent or reckless with regard to this deprivation of Plaintiff Jane Doe's constitutional and federally protected rights.

256. Ohio Hi-Point Defendants' unlawful policy, practice, or custom was also evidenby by their deliberate indifferent in:

    a. The actions taken by officials with final decision-making authority, including without limitation:

        i. The repeated decisions of Ohio Hi-Point Defendants to take no action to address the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination of Plaintiff Jane Doe, as reported by Plaintiff Jane Doe, Plaintiff Mary Doe, Plaintiff Dan Doe, Friend A, Friend B, Friend C, and Friend D;

        ii. Their repeated failure to complete reports of each complaint of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe and others during class, in the hallways, and on the bus;

        iii. Their complete and utter refusal to address a single instance of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination when it was occurring right in front of certain Defendants;

        iv. Their repeated refusals to investigate or discipline Minor Student 1, despite their actual knowledge of his identity and their knowledge that any remedial action they had taken was ineffective;

        v. Their failure to conduct a proper investigation and take into account Plaintiff Jane Doe's experience during Rape #2, instead coercing her to sign a document she did not understand which purportedly, upon information and belief, admitted to engaging in consensual sexual activity that was not true, and forcing her to endure discipline in the form of Suspension #2 for "having sex" when in fact she had endured criminal sexual violence against her.

    b. Failing to properly train, instruct, oversee, supervise, and discipline their officials and teachers in proper methods of responding to sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination, and/or negligently performing these responsibilities.

    c. The training and supervision was obviously and clearly inadequate and/or negligent, especially given the conduct of administrators and teachers described in this Complaint, including without limitation:

        i. Their failure to report incidents of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination to their superiors or complete reports on the same;

    ii.    Their failure to communicate with each other and comprehend that Plaintiff's falling grades and out-of-character behavior was related to the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination she was suffering;

    iii.    Defendant Dean of Students Cook's disciplinary action against Plaintiff Jane Doe in Suspension #1 and Suspension #2, when the conduct of Minor Student 1 and Judy Roes #30–#33 went without any disciplinary action;

    iv.    Defendant Director Ramey's coercing Plaintiff Jane Doe, during a private meeting without benefit of Plaintiff Jane Doe's attorney, parent, or any other support, to alter Plaintiff Jane Doe's statement regarding Minor Student 2 and Rape #2, purportedly, upon information and belief, forcing her to sign a document she did not understand or believe, and using that document to justify unlawful disciplinary action against Plaintiff Jane Doe in the form of Suspension #2;

    v.    Ohio Hi-Point Defendants' failure to offer Plaintiff Jane Doe counseling and/or adequate counseling, and actively depriving her of access to Defendant School Counselor Gonglik;

    vi.    The failure of teachers and administrators to detect and report sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination of Plaintiff Jane Doe by Minor Student 1, Minor Student 2, and Judy Roes #30–#33.

    vii.    The failure of Defendant Director Ramey to personally intervene and end the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination despite direct knowledge of the misconduct against Plaintiff Jane Doe.

    d.  Failing to follow their own anti-bullying and anti-sexual discrimination policies, as described above;

    e.  Failing to maintain, adopt, and/or implement policies and procedures regarding sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination necessary to prevent the constitutional violations suffered by Plaintiff Jane Doe; and

    f.  Failing to maintain files on bullies/harassers, and the failure to institute a tracking system for sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination incidents.

257.    Ohio Hi-Point Defendants' actions and omissions were also part of a pattern and practice in which Ohio Hi-Point Defendants failed to protect Ohio Hi-Point Career

Center students from sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination.

258.  Ohio Hi-Point Defendants were deliberately indifferent, and knew or should have known that these violations reflected the toleration of a widespread policy, practice, or custom of failing to adequately respond to sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination so as to safeguard the constitutionally protected rights of students, the failure to adopt and/or implement adequate policies, and deficient/negligent training, oversight, supervision, and discipline.

259.  Defendants were deliberately indifferent, and knew or should have known that these actions and omissions were likely to cause injury to students, and actually caused injury to students including Plaintiff Jane Doe.

260.  As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education.

261.  As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT IV

### NEGLIGENCE/GROSS NEGLIGENCE

262. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

263. The actions of all Defendants, including Ohio Hi-Point Defendants, Minor Student 1, Minor Student 2, Defendant Donna Jean Williams, John/Judy Roes #1–#10, and John/Judy Roes #11–#33, as enumerated above (collectively, "Defendants"), in (a) sexually violating, harassing, intimidating, bullying, assaulting, battering, and discriminating against Plaintiff Jane Doe; and in (b) failing to properly respond to the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe, despite their actual and constructive knowledge of these events, and their directly witnessing physical, verbal, and other forms of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe, which constitutes negligence, recklessness, and/or gross negligence under Ohio law.

264. Defendants' negligence, recklessness, and gross negligence includes without limitation: failing to follow federal and Ohio law; failing to follow their own anti-bullying and anti-sexual harassment policies, as specified above; failing to investigate and end the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination; failing to identify and discipline the bullies and/or perpetrators of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe; failing to report incidents of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination to the school

administration; and deliberately coercing Plaintiff Jane Doe to change her report of Rape #2 and using the coerced false report to justify Suspension #2.

265. Defendants' negligence, recklessness, and gross negligence includes without limitation their failure to create and implement policies necessary for the government of their schools and students, as required by R.C. §3313.20.

266. Defendants' recklessness and gross negligence also includes their violation of Ohio's Anti-Bullying statute, R.C. §3313.666. These violations include without limitation: (a) failure to document incidents of bullying and harassment against Plaintiff Jane Doe in writing and notifying her parents of the incidents; (b) failure to use intervention strategies for protecting Plaintiff Jane Doe from additional sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination, as well as retaliation; (c) failure to use interventions or disciplinary procedures for the bullies/harassers of Plaintiff Jane Doe.

267. Defendant School Counselor Gonglik's negligence, recklessness, and gross negligence includes her failure to offer counseling and/or adequate counseling to Plaintiff Jane Doe despite her knowledge of the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe.

268. Defendant Diesel Instructor Wilson's negligence, recklessness, and gross negligence includes his (a) failing to report incidents of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination occurring in his own classroom; (b) participating in and encouraging the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination occurring in his own classroom; and (c) permitting Rape #2 to occur during his class period.

269.    Defendant Dean of Students Cook's negligence, recklessness, and gross negligence
        includes his (a) failing to investigate incidents of sexual violence, harassment,
        intimidation, bullying, assault/battery, and discrimination as reported to him; (b)
        participating in and encouraging Defendant Director Ramey's use of Plaintiff Jane
        Doe's coerced statement regarding Rape #2; and (c) failing to discipline Minor
        Student 1, instead taking action to discipline Plaintiff Jane Doe with Suspension #1
        and Suspension #2.

270.    Defendant Director Ramey's negligence, recklessness, and gross negligence
        includes her (a) failing to investigate incidents of sexual violence, harassment,
        intimidation, bullying, assault/battery, and discrimination occurring in his own
        classroom; (b) failing to provide Plaintiffs with her report of the incidents of sexual
        violence, harassment, intimidation, bullying, assault/battery, and discrimination
        occurring in his own classroom; (c) coercing Plaintiff Jane Doe to change her story of
        Rape #2 and then using the coerced statement to justify Suspension #2; and (d) failing
        to report the crimes reported to her to the proper authorities.

271.    The actions and omissions of all Defendants constitute malicious purpose, bad
        faith, and reckless, willful, and wanton misconduct in violation of R.C.
        §2744.03(A)(6).

272.    The actions and omissions of Ohio Hi-Point Defendants were outside the course
        and scope of their employment at Ohio Hi-Point Career Center.

273.    As a direct and proximate result of Defendants' actions and omissions, Plaintiff
        Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of
        enjoyment of life, physical impairment, inability to perform ordinary activities,
        extreme emotional pain and suffering, and was wholly and completely deprived of an

education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

274. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

275. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

**COUNT V**

**BREACH OF DUTY OF CARE AND SUPERVISION**

276. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

277. Plaintiff Jane Doe was at all times relevant to this Complaint under the care, custody, control, and supervision of Ohio Hi-Point Defendants, and was in fact compelled by the laws of the State of Ohio to attend school and submit to the care, custody, and control of school authorities.

278. Ohio Hi-Point Defendants had a duty to care for, protect, supervise, support, and control their students; to exercise a duty of reasonable care in loco parentis; and to avoid creating a substantial risk to the health or safety of their students either by action or omission.

279. The foregoing duties are established by the common law of Ohio, as well as by R.C. §§2151.03, 2919.22, 3313.20, 3313.666, 2307.44, 3313.666(B), 2151.421, and 3313.534.

280. Ohio Hi-Point Defendants voluntarily assumed a duty of care to ensure that Plaintiff Jane Doe and all Ohio Hi-Point Career Center students were protected from sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination by adopting anti-bullying, anti-harassment, anti-discrimination, and anti-assault/battery policies.

281. The actions of Ohio Hi-Point Defendants, as enumerated in this Complaint, constitute a violation of the aforementioned duties.

282. The actions and omissions of Ohio Hi-Point Defendants constitute malicious purpose, bad faith, and reckless, willful, and wanton misconduct in violation of R.C. §2744.03(A)(6).

283. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

284. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

285. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

286.  Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

287.  Defendants either intended to cause emotional distress to Plaintiffs, or knew or should have known that their actions and omissions would result in serious emotional distress to Plaintiffs.

288.  Defendants' actions and omissions in failure to take appropriate action against the bullies/harassers of Plaintiff Jane Doe, and the actions of Minor Student 1, Minor Student 2, and John/Judy Roes #11–#33 in perpetrating sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe, were extremely outrageous and shocking to the conscience.

289.  Defendants' actions and omissions directly and proximately caused extreme emotional distress and mental/psychological/emotional harm to Plaintiff Jane Doe and Plaintiffs Dan, Mary, and Jenny Doe.

290.  As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

291.  As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary

services and treatment, and will continue to incur further such expenses into the indefinite future.

292. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## **COUNT VII**

## **INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

293. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

294. Defendants' actions and omissions in failing to take appropriate action against the bullies/harassers of Plaintiff Jane Doe, and the actions of Minor Student 1, Minor Student 2, and John/Judy Roes #11–#33, and other bullies, in perpetrating sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe, directly, proximately, and foreseeably caused Plaintiffs' injuries and damages.

295. Defendants' actions and omissions directly and proximately caused extreme emotional distress and mental/psychological/emotional harm to Plaintiff Jane Doe and Plaintiffs Dan, Mary, and Jenny Doe, and were carried out in bad faith, and in a malicious, reckless, willful, and wanton manner.

296. As a direct and proximate result of Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an

education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

297. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

298. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT VIII

### VIOLATION OF R.C. §2307.44
### HAZING/BULLYING

299. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

300. Plaintiff Jane Doe was subjected to sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination as a student in the Ohio Hi-Point School District during school hours and during school sanctioned events.

301. Defendants had a mandatory duty to create and enforce anti-bullying, anti-hazing, and anti-harassment standards pursuant to R.C. §§2307.44, 3313.666(B), and 3313.534.

302. Defendants failed to create and enforce such standards, as described above.

303. As a direct and proximate result of Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities,

extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

304. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

305. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT IX

### VIOLATION OF R.C. §2151.421
### FAILURE TO REPORT CHILD ABUSE

306. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

307. Ohio Hi-Point Defendants, acting in an official or professional capacity, and Defendant Donna Jean Williams knew, should have known, or had reasonable cause to suspect that Plaintiff Jane Doe suffered or faced a threat of suffering a physical or mental wound, injury, or disability, to wit: that Plaintiff Jane Doe had been physically assaulted/battered, bullied, harassed, sexually violated, and discriminated against, and that she was likely to physically harm herself and was a risk to commit suicide, among other things.

308. Pursuant to R.C. §2151.421, Ohio Hi-Point Defendants and Defendant Donna Jean Williams had a duty to report that they knew, should have known, or had a reasonable

cause to suspect that Plaintiff Jane Doe suffered or faced a threat of suffering a physical or mental wound, injury, or disability.

309.    Ohio Hi-Point Defendants and Defendant Donna Jean Williams breached their duty when they failed to report as required by R.C. §2151.421.

310.    As a direct and proximate result of Ohio Hi-Point Defendants' and Defendant Donna Jean Williams's actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

311.    As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

312.    As a direct and proximate result of Ohio Hi-Point Defendants' and Defendant Donna Jean Williams's actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT X

### BREACH OF EXPRESS AND/OR IMPLIED CONTRACT

313.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

314.    Plaintiffs Dan and Mary Doe and Plaintiff Jane Doe enrolled Plaintiff Jane Doe as a student in the Ohio Hi-Point School District, and specifically at Ohio Hi-Point Career Center.

315.    Plaintiffs Dan, Mary, and Jane Doe formed an agreement with Ohio Hi-Point Defendants to attend this school, and for these school officials to educate, supervise, and otherwise care for Plaintiff Jane Doe.

316.    Upon information and belief, Plaintiffs Dan, Mary, and Jane Doe signed various school documents and issued certain payments as part of the enrollment process, and/or throughout the course of the course of the school year, agreeing among other things to Plaintiff Jane Doe's attendance.

317.    This agreement was contractual in nature.

318.    As part of the agreement, Plaintiffs paid fees, costs, property taxes, and other funds to Ohio Hi-Point Defendants.

319.    Ohio Hi-Point Defendants published policies, protocols, and procedures upon which Plaintiff Jane Doe relied for supervision, care, and protection.

320.    Plaintiff Jane Doe fulfilled her obligations under the agreement by attending school, abiding by Ohio Hi-Point Defendants' policies, protocols, and procedures, and by otherwise completing or attempting to complete the work assigned to her.

321.    Ohio Hi-Point Defendants breached and otherwise failed to fulfill their obligations under the agreement in several ways including without limitation:

   a. Failing to protect Plaintiff Jane Doe from sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination;

   b. Failing to enforce Ohio Hi-Point Defendants' anti-bullying, anti-harassment, and anti-discrimination policies;

    c. Failing to adequately train, instruct, or supervise and/or negligently training, instructing, or supervising Ohio Hi-Point teachers/administrators/staff regarding those policies, and about proper methods of responding to such events;

    d. Failing to oversee, supervise, and discipline staff in carrying out their duties under these policies; and

    e. Failing to adopt, and/or implement adequate policies and procedures regarding sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination necessary to prevent the constitutional violations suffered by Plaintiff Jane Doe.

322. Ohio Hi-Point Defendants' breach of the agreement directly and proximately damaged Plaintiffs Dan, Mary, and Jane Doe as alleged.

323. Plaintiffs Dan Doe's, Mary Doe's, and Jane Doe's actual damages include payments to the school in the form of taxes, books, clothing, tuition, fees, and other amounts.

## COUNT XI
## VIOLATION OF TITLE II
## AMERICANS WITH DISABILITIES ACT OF 1990
## 42 U.S.C. §§12131 *et seq.*

324. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

325. Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12131 *et seq.* ("ADA") prohibits discrimination against individuals with disabilities in all areas of public life, including the public school systems, and all public and private places that are open to the general public.

326. Plaintiff Jane Doe is a person with a recognized disability as documented by her Individualized Educational Plan (IEP) that put Ohio Hi-Point Defendants on notice of her disability.

71

327.    School districts and their personnel violate the ADA when peer harassment based on disability is sufficiently serious that it creates a hostile environment, and such harassment is encouraged, tolerated, not adequately addressed, or ignored by school employees.

328.    School districts and their personnel also violate the ADA when they fail to provide accommodations to allow a person with a disability equal access to education and educational resources.

329.    Ohio Hi-Point Defendants knew or should have known of the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe based on sex and disability.

330.    Ohio Hi-Point Defendants' actions and omissions regarding Plaintiff Jane Doe's disability diminished her ability to:

    a. express herself and represent her experiences fully in her reports of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination;

    b. defend herself or seek assistance in defending against or preventing sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination on the basis of gender and disability;

    c. recognize situations in which she was placed in danger of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination; and

    d. recognize situations in which her treatment at the school, by both peers and school personnel, created barriers to her equal access to education and in fact deprived her of equal education.

331.    Ohio Hi-Point Defendants made no effort to provide Plaintiff Jane Doe with any assistance to adequately understand, comprehend and/or articulate her experiences and fully report on them to proper authorities both within and outside the school system. Ohio Hi-Point Defendants treated Plaintiff Jane Doe with no understanding

or respect, gave no indication that they understood that she was slowed by her disability – both in avoiding violent and harassing behaviors toward her, and in describing them and advocating for assistance from the school.

332. Instead of accommodating Plaintiff Jane Doe's disability, Ohio Hi-Point Defendants punished Plaintiff Jane Doe by treating her as if she were responsible for the sexual violence, harassment and bullying to which she was subjected.

333. Ohio Hi-Point Defendants further took advantage of Plaintiff Jane Doe's disability when Defendant Director Ramey forced Plaintiff Jane Doe to meet alone, without representation or support, and coerced Plaintiff Jane Doe into signing a document she did not understand, and then used that document to justify imposing sanctions against Plaintiff Jane Doe in the form of Suspension #2.

334. Ohio Hi-Point Defendants wholly and utterly failed in their obligations to provide Plaintiff Jane Doe with equal access to education and educational resources in violation of the ADA.

335. Ohio Hi-Point Defendants negligently, recklessly, knowingly, willfully, and wantonly created an environment hostile to persons with disabilities and encouraged, tolerated, ignored, and failed to address that hostile environment, allowing it to thrive and injure Plaintiffs.

336. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

337. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

338. As a direct and proximate result of Ohio Hi-Point Defendants' and Defendant Donna Jean Williams's actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT XII
### VIOLATION OF SECTION 504 OF THE
### REHABILITATION ACT OF 1973, 29 U.S.C. §794

339. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

340. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") prohibits discrimination against individuals with disabilities by programs that receive federal financial assistance, such as Ohio Hi-Point Defendants.

341. School districts and their personnel violate Section 504 when peer harassment based on disability is sufficiently serious that it creates a hostile environment, and such harassment is encouraged, tolerated, not adequately addressed, or ignored by school employees.

342. School districts and their personnel also violate Section 504 when they fail to provide accommodations to allow a person with a disability equal access to education and educational resources.

343.   Plaintiff Jane Doe is a person with a recognized disability as documented by her Individualized Educational Plan (IEP) that put Ohio Hi-Point Defendants on notice of her disability.

344.   Ohio Hi-Point Defendants knew or should have known of the sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination against Plaintiff Jane Doe based on sex and disability.

345.   Ohio Hi-Point Defendants' actions and omissions regarding Plaintiff Jane Doe's disability diminished her ability to:

   a.   express herself and represent her experiences fully in her reports of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination;

   b.   defend herself or seek assistance in defending against or preventing sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination on the basis of gender and disability;

   c.   recognize situations in which she was placed in danger of sexual violence, harassment, intimidation, bullying, assault/battery, and discrimination; and

   d.   recognize situations in which her treatment at the school, by both peers and school personnel, created barriers to her equal access to education and in fact deprived her of equal education.

346.   Ohio Hi-Point Defendants made no effort to provide Plaintiff Jane Doe with any assistance to adequately understand, comprehend and/or articulate her experiences and fully report on them to proper authorities both within and outside the school system. Ohio Hi-Point Defendants treated Plaintiff Jane Doe with no understanding or respect, gave no indication that they understood that she was slowed by her disability – both in avoiding violent and harassing behaviors toward her, and in describing them and advocating for assistance from the school.

347. Instead of accommodating Plaintiff Jane Doe's disability, Ohio Hi-Point Defendants punished Plaintiff Jane Doe by treating her as if she were responsible for the sexual violence, harassment and bullying to which she was subjected.

348. Ohio Hi-Point Defendants further took advantage of Plaintiff Jane Doe's disability when Defendant Director Ramey forced Plaintiff Jane Doe to meet alone, without representation or support, and coerced Plaintiff Jane Doe into signing a document she did not understand, and then used that document to justify imposing sanctions against Plaintiff Jane Doe in the form of Suspension #2.

349. Ohio Hi-Point Defendants wholly and utterly failed in their obligations to provide Plaintiff Jane Doe with equal access to education and educational resources in violation of Section 504.

350. Ohio Hi-Point Defendants negligently, recklessly, knowingly, willfully, and wantonly created an environment hostile to persons with disabilities and encouraged, tolerated, ignored, and failed to address that hostile environment, allowing it to thrive and injure Plaintiffs.

351. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

352. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary

services and treatment, and will continue to incur further such expenses into the indefinite future.

353. As a direct and proximate result of Ohio Hi-Point Defendants' and Defendant Donna Jean Williams's actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT XIII

### ASSAULT AND BATTERY

354. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

355. Minor Student 1, Minor Student 2, and John/Judy Roes #11–#33 (collectively, "Student Defendants") assaulted Plaintiff Jane Doe by willfully threatening or attempting to harm or touch Plaintiff Jane Doe offensively, which threat or attempt reasonably placed Plaintiff Jane Doe in fear of such contact.

356. Student Defendants battered Plaintiff Jane Doe by intentionally causing unconsented harmful or offensive contact with Plaintiff Jane Doe, to wit: shoulder checking her, touching her, groping her, shoving her, stepping on her feet, and tripping her, among other incidents.

357. As a direct and proximate result of Ohio Hi-Point Defendants' actions and omissions, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

358. As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

359. As a direct and proximate result of Ohio Hi-Point Defendants' and Defendant Donna Jean Williams's actions and omissions, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT XIV

### RAPE

360. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

361. Minor Student 1 and Minor Student 2 (collectively, "Minor Students 1-2") engaged in sexual conduct with Plaintiff Jane Doe by use of force or threat of force when Minor Students 1-2 knew or had reasonable cause to believe that Plaintiff Jane Doe's ability to resist or consent was substantially impaired because of a mental condition underlying her documented disability.

362. As a direct and proximate result of actions by Minor Students 1-2, Plaintiff Jane Doe has suffered trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, physical impairment, inability to perform ordinary activities, extreme emotional pain and suffering, and was wholly and completely deprived of an education, as she was unable to graduate from Ohio Hi-Point Career Center with her senior class in spring 2020.

363.    As a direct and proximate result of Plaintiff Jane Doe's injuries, Plaintiffs Dan Doe, Mary Doe, and Jane Doe have incurred reasonable medical expenses for necessary services and treatment, and will continue to incur further such expenses into the indefinite future.

364.    As a direct and proximate result of actions by Minor Students 1-2,, Plaintiffs Dan Doe, Mary Doe, and Jenny Doe have lost the companionship and consortium of Plaintiff Jane Doe.

## COUNT XV

### LOSS OF CONSORTIUM

365.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

366.    Defendants negligently and intentionally cause din jury to Plaintiff Jane Doe.

367.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs Dan, Mary, and Jenny Doe have suffered a loss of consortium including without limitation loss of services, society, companionship, care, assistance, attention, affection, and assistance, and are thereby entitled to damages.

## COUNT XVI

### REQUEST FOR PUNITIVE DAMAGES

368.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

369.    Based on the foregoing allegations as pleaded, Plaintiffs are entitled to punitive damages from Defendants due to conduct that is shocking to the conscience and outrageous.

## COUNT XVII

## REQUEST FOR DECLARATORY JUDGMENT

370. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

371. A real and justiciable controversy exists, as pleaded herein.

372. Plaintiffs are entitled to a declaration as to the rights of the parties that will terminate uncertainty and put an end to the controversy.

373. Plaintiffs have a legal interest in the controversy.

374. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, and Ohio's Declaratory Judgment Act, R.C. 2721.01, *et seq.*, Plaintiffs request an order declaring that the acts and conduct of all Defendants constitute violations of Plaintiffs' constitutional, statutory and common-law rights.

375. Plaintiffs further request a monetary judgment against Defendants, as well as attorneys' fees, costs, and interest.

## COUNT XVIII

## REQUEST FOR INJUNCTIVE RELIEF

376. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as though completely rewritten herein.

377. Plaintiffs have suffered irreparable injury including without limitation physical injury, psychological injury, and consequent mental and emotional injuries;

378. The remedies available at law, such as monetary damages, are inadequate to compensate for those injuries.

379. Given the balance of hardship between Plaintiffs and Defendants, a remedy in equity is warranted.

380. The public interest would be served by a permanent injunction, and in fact, the public interest would be greatly furthered by the permanent injunction sought herein.

381. Plaintiffs therefore request a permanent injunction ordering Defendants to stop engaging in unconstitutional and unlawful acts, and to develop policies and procedures for ending any such unconstitutional and unlawful acts and the hostile and intolerant environment, including but not limited to the following:

   a. Require Defendants to implement mandatory and effective training programs for Ohio Hi-Point School District faculty, staff, and students on issues relating to bullying, harassment, sexual discrimination, and sexual/gender/gender orientation/disability discrimination, and methods to intervene to stop students from bullying or harassing other students for any reason but particularly based on their sex, disability, gender, or gender identification;

   b. Require Defendants to adopt policies with specific guidelines for instructing teachers, security guards, bus drivers, hall monitors, and administrators about how to address student complaints where the student has been bullied, harassed, or discriminated against for any reason but particularly based on his or her sex, disability, gender, or gender identification;

   c. Require Defendants to adopt policies implementing increased and enhanced supervision of staff enforcement of anti-bullying, anti-harassment, and anti-discrimination policies, including without limitation semi-annual reviews of all staff regarding compliance with said policies, and revised job descriptions of the Superintendent, Director, Dean of Students, Special Education Coordinator, Academic/Student Services Supervisor, Nurse, and School Counselor within the District reflecting that said officials are responsible for supervising staff members' compliance with said policies.

   d. Require Defendant Ohio Hi-Point School District Board of Education to terminate from employment Defendant Diesel Technology Instructor John Wilson;

   e. Require Defendants to adopt and/or revise their policies to mandate that notice of all harassment, bullying, and sexual/gender/gender orientation/disability discrimination complaints are promptly provided to the Superintendent, Director, Dean of Students, Academic/Student Services

Supervisor, Special Education Coordinator, School Counselor, Instructors, and the parents and/or custodians of the student-victims and student-perpetrators;

f. Require the Superintendent and the School Board to review all complaints of bullying, harassment, and sexual/gender/gender orientation/disability discrimination, as well as any investigations, disciplinary measures, and other school responses thereto;

g. Require Defendants to adopt and/or revise policies to ensure that complaints of online bullying, harassment, or discrimination ("cyber-bullying"), occurring both on and off school grounds and both during and after school hours, are promptly and properly investigated, and are reported to the parents and/or legal custodians of student-victims and student-perpetrators, and/or proper law enforcement officials and that effective measures are taken to ensure that the cyber-bullying ceases and/or that cyber-bullying is adequately punished;

h. Require Defendants to adopt policies requiring the District to offer professional counseling and other forms of mental, emotional, and social support to all students who have reportedly been bullied, harassed, or discriminated against;

i. Require Defendants to conduct assemblies for all students in the School District addressing issues of bullying, harassment, discrimination and tolerance, wherein students are instructed about laws, regulations, and policies prohibiting bullying, harassment and discrimination, and about the effects of harassment, bullying, and discrimination on victims, and regarding the support available to victims;

j. Require Defendants to assign a peer mediator and/or other staff member to District schools to provide active monitoring for the schools and to address instances of bullying, harassment, and discrimination that arise at the schools;

k. Require Defendants to allow Student Government to receive and address instances of student-on-student instances of bullying, harassment, and discrimination that arise at the school and to make recommendations to Defendant Ohio Hi-Point School District Board of Education as to the appropriate resolution to the incident including and up to expulsion of the student found to have engaged in prohibiting bullying, harassment and discrimination;

l. Require Defendants to maintain files on students who have been accused of bullying, harassment, and discrimination, and to institute a tracking system for bullying, harassment, and sexual/gender/gender orientation/disability discrimination incidents;

m. Require Defendants to maintain statistical data concerning each

82

complaint of bullying, harassment, or sexual/gender/gender orientation/disability discrimination reported to Defendants, as well as the specific action the district Superintendent, Director, Dean of Students, Special Education Coordinator, School Counselor, Academic/Student Services Supervisor, Nurse, and/or instructors, teachers, security guards, bus drivers, and administrators took to resolve the complaint;

n. Require Defendants to provide in writing to all parents of Ohio Hi-Point Career Center students the above-referenced statistical data; the District's policies regarding bullying, harassment, and discrimination; the District's training programs for administrators and/or staff regarding these subjects; and the resources available to students who have been bullied, harassed or discriminated against;

o. Require Defendants to develop peer support programs to counteract bullying, harassment and discrimination, and promote peer respect, kindness, values, compassion, and goodwill; and

p. For all other injunctive relief that the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment in their favor and pray for relief against Defendants as follows:

1. For an order granting Plaintiffs compensatory, punitive, treble, incidental, exemplary, and other damages, in amounts in excess of $75,000 but which will be more fully determined by the finder of fact;

2. For an order granting the declaratory relief sought herein;

3. For an order granting the injunctive relief sought herein;

4. For an order granting Plaintiffs their expenses and costs, including reasonable attorneys' fees;

5. For an order granting Plaintiffs pre-judgment and post-judgment interest; and

6. For an order granting Plaintiffs all other and further relief to which they are entitled at law or in equity.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues within this Complaint.

Respectfully submitted,

**CABOT ROUBANES LUKE CO., L.P.A.**

By: */s/ Barbara A. Luke*
    Barbara A. Luke (0068210)
    275 West Fifth Street
    Marysville, Ohio 43040
    Telephone: (937) 738-2751
    Facsimile: (937) 834-4448
    Email: Barbara.Luke@LukeLawyers.com

**THE ANELLI LAW FIRM, L.L.C.**

By: */s/ Dianna Anelli*
    Dianna Anelli (0062973)
    3010 Hayden Road
    Columbus, Ohio 43235
    Telephone: (614) 228-7710
    Facsimile: (614) 340-3190
    Email: danelli@anelli-law.com

Attorneys for Plaintiffs

cc: Plaintiffs Dan, Mary, and Jane Doe