UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JANE DOE, ET AL.,

      Plaintiffs,

  v.

OHIO HI-POINT SCHOOL DISTRICT
BOARD OF EDUCATION, *et. al.*,

      Defendants.

Case No. 2:20-cv-4798
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant Donna Jean Williams ("Defendant Williams"), Guardian of Defendant Minor Student 1 ("Defendant J.C.") and Defendant J.C.'s Joint Motion to Dismiss All Claims Asserted Against Them Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 28 U.S.C. § 1367. (ECF No. 23.) For the reasons stated herein, the Joint Motion of Defendants J.C. and Williams is **GRANTED IN PART** and **DENIED IN PART**. (*Id.*)

### I. Background

Plaintiffs Jane Doe, her mother Mary Doe, her father John Doe, and sister Jenny Doe (collectively, "Plaintiffs") have filed an eighty-four page, eighteen-count complaint seeking declaratory, injunctive, and/or legal relief against forty-eight different named and unnamed defendants. (ECF No. 3.) The action, in short, challenges the various forms of gender- and disability-based harassment and discrimination that Plaintiff Jane Doe allegedly endured while attending the Ohio Hi-Point Career Center (the "Ohio Hi-Point Center") in Bellefontaine, Ohio. (*Id.* at PageID #93.) It asserts, specifically, that from August through November 2019, Plaintiff

1

Jane Doe, as an Ohio Hi-Point Center student, "was continually bullied, harassed, assaulted, battered, [and] raped" by her fellow peers; that Plaintiff Jane Doe and her family "repeatedly pleaded" with various Ohio Hi-Point Center officials to help stop these attacks; and that those pleas, in essence, fell on deaf ears. (*Id.*)

### A. The Defendants

The forty-eight defendants listed in Plaintiffs' Complaint can be separated into three factions: (i) the organizations, administrators, and teachers affiliated with the Ohio Hi-Point Center (the "Ohio Hi-Point Defendants");[1] (ii) Plaintiff Jane Doe's student peers at the Ohio Hi-Point Center, including Defendant J.C. (the "Student Defendants");[2] and (iii) Defendant Williams, who, at the time, was the guardian of Defendant J.C (collectively, "Defendants"). (ECF No. 3.)

### B. Background

Plaintiffs allege that Plaintiff Jane Doe is a mentally disabled female who, at all relevant times, qualified for protection under the Americans with Disabilities Act. (ECF No. 3 at ¶ 3.) They further allege that, as a minor, Plaintiff Jane Doe enrolled in the "diesel engine program" at the Ohio Hi-Point Center, a vocational school, in the beginning of the 2019 academic year. (*Id.* at ¶ 28.) Plaintiffs contend that, immediately upon enrollment, Plaintiff Jane Doe's classmates subjected her to gender- and disability-based "bully[ing] and abuse." (*Id.* at ¶ 31.) One of those students was Defendant J.C., who Plaintiffs allege instantly became

> physically and emotionally possessive [of Plaintiff Jane Doe] . . . frequently touching and grabbing her body, including her breasts, arms, vagina, and buttocks, openly during class and in the hallways, grabbing her by the crotch and proclaiming for all to hear, '[T]his is mine.'

---

[1] This includes the (i) Ohio Hi-Point School District Board of Education; (ii) the Ohio Hi-Point School District's superintendent, Rick Smith; (iii) the Director of the Ohio Hi-Point Center, Tonya N. Ramey; (iv) the Hi-Point Center's Dean of Students, Jon Cook; and (v) eighteen named and unnamed employees, administrators, and teachers of the Ohio Hi-Point Center. (ECF No. 3.)
[2] This includes Defendant J.C., Defendant Minor Student 2, and Defendants John/Judy Roes #11-33. (ECF No. 3.)

(*Id.*)

These attacks soon transcended school boundaries, when, on September 13, 2019, Defendant J.C. allegedly

> lured Plaintiff Jane Doe to his home where he lived with his grandmother and, upon information and belief, . . . proceeded to brutally rape Plaintiff Jane Doe multiple times at his home and elsewhere in Logan County, restrained Plaintiff Jane Doe in his home against her will, transported her to other locations in Logan County against her will, took her cell phone away from her which prevented her from seeking outside help, and prevented her from leaving by force and/ or threat of force, holding Plaintiff Jane Doe against her will and restraining her liberty throughout the course of the weekend September 13, September 14, and September 15, 2019, until she was finally able to escape on Sunday, September 15, 2019.

(*Id.* at ¶ 40) ("Rape #1"). Plaintiffs allege that Defendant J.C. "carried out Rape #1 while in the custody, care, and control of" Defendant Williams, his grandmother and then-legal guardian. (*Id.* at ¶¶ 40-41.)

After Rape #1, Plaintiffs allege that many of Plaintiff Jane Doe's classmates—including Defendant J.C.—continued to sexually harass, physically threaten, and bully her. (*Id.* at ¶¶ 47-57, 64, 66, 68, 80, 129-31, 139, 143, 147.) They assert that "[o]ver the course of the next two months," Plaintiffs Mary, Dan, and Jane Doe "made more than 25 reports to [various] Ohio Hi-Point Defendants regarding" this abuse, but that these school officials "failed to respond" to Plaintiff Jane Doe's situation. (*Id.* at ¶ 47; *see id.* at ¶ 81, 83-84, 91.) Some even allegedly encouraged it. (*Id.* at ¶¶ 67-68, 78.)

On October 2, 2019, Plaintiffs Jane, Mary, and Dan Doe met with various school administrators—including Defendant Jon Cook and Defendant Tonya Ramey—to discuss Defendant J.C.'s persistent harassment (the "October 2 Meeting"). (*Id.* at ¶¶ 89-91.) There, Defendant Ramey allegedly stated that Defendant J.C.'s conduct constituted "dating violence and abuse," and "admitt[ed] that she had seen some of it herself." (*Id.* at ¶ 91.) Defendant Ramey

3

allegedly further noted that, since Plaintiff Jane Doe was eighteen by that point, it was her obligation to "file charges" against Defendant J.C. (*Id.* at ¶ 91.) The next day, the school issued a "No Contact Order" which prohibited Plaintiff Jane Doe from contacting Defendant J.C. (*Id.* at ¶ 95.)

The day before the October 2 Meeting, Plaintiff Jane Doe was suspended from school. (*Id.* at ¶¶ 83-84.) On October 7, 2019, Plaintiffs Jane, Mary, and Dan Doe met with Defendants Ramey and Robin Harrington to appeal this suspension (the "October 7 Meeting"). (*Id.* at ¶ 98.) There, Defendant Ramey announced that the school had launched a "sexual harassment investigation" into Plaintiff Jane Doe's allegations and "identified herself as the Title IX Investigator." (*Id.*) At the same meeting, Plaintiff Jane Doe allegedly "disclosed to everyone in attendance" that Defendant J.C. had raped her the month prior. (*Id.* at ¶ 99.) This allegation, Plaintiffs assert, was laughed off by Defendants Ramey and Harrington. (*Id.* at ¶ 100.) Plaintiffs further allege that, from that day forward, Defendants Ramey and Harrington "failed to report the rape to the appropriate authorities." (*Id.* at ¶ 104.)

On October 30, 2019, Plaintiffs allege that another classmate of Plaintiff Jane Doe, Defendant Minor Student 2, raped her on school grounds ("Rape #2"). (*Id.* at ¶ 143.) This event, too, was allegedly reported to, and disregarded by, Defendant Ramey. (*See id.* at ¶ 155.)

On November 11, 2019, Plaintiff Jane Doe was admitted to the emergency room of the Mary Rutan Hospital to receive treatment for "ongoing panic attacks, injuries from Rape #1 and Rape #2, and severe mental and emotional distress from the bullying, harassment, sexual assault, and abuse" she endured. (*Id.* at ¶ 176.) After this visit, she took medical leave from the Ohio Hi-Point Center for the rest of the academic year, and, eventually, unenrolled from the school. (*Id.* at ¶¶ 176, 201-06.)

4

On September 16, 2020, Plaintiffs filed the instant action. (*Id.*)

### C. Injuries and Claims

Plaintiffs allege that the physical and emotional abuse Plaintiff Jane Doe endured in the two-plus months she attended the Ohio Hi-Point Center manifested "trauma, severe physical pain, mental distress, anxiety, loss of enjoyment of life, [and] physical impairment" and "wholly and completely deprived [her] of an education[;]" that both she and her parents, Plaintiffs Dan and Mary Doe, have had to pay for medical treatment resulting from those injuries; and that, as a result of her trauma, Plaintiffs Dan, Mary, and Jenny Doe have "lost the companionship and consortium of Plaintiff Jane Doe." (*Id.* at ¶¶ 235-37.)  To gain relief for these injuries, they assert eighteen different federal- or state-law causes of action.

#### 1. Federal Claims

Of the eighteen counts in Plaintiffs' Complaint, five are federal in nature. These include:

- Count I against the Ohio Hi-Point Defendants for violating Plaintiff Jane Doe's substantive due process rights.
- Count II against the Ohio Hi-Point Defendants for violating Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681.
- Count III against the Ohio Hi-Point Defendants for violating Plaintiff Jane Doe's constitutional rights under 42 U.S.C. § 1983 and *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).
- Count XI against the Ohio Hi-Point Defendants for violating Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq*.
- Count XII against the Ohio Hi-Point Defendants for violating the Rehabilitation Act of 1973, 29 U.S.C. § 794.

#### 2. State-Law Claims Against Defendants J.C. and Williams

Of the Complaint's thirteen remaining counts, three—Counts XVI through XVIII—request punitive damages and declaratory/injunctive relief. Eight implicate one or both of Defendants J.C. and Williams. These include:

5

- Count IV against all defendants for negligence and/or gross negligence.
- Count VI against all defendants for intentional infliction of emotional distress.
- Count VII against all defendants for intentional/negligent infliction of emotional distress.
- Count VIII against all defendants for violating Ohio's "anti-hazing" statute, Ohio Rev. Code § 2307.44 (Plaintiffs' "Anti-Hazing Claim").
- Count IX against Defendant Williams and the Ohio Hi-Point Defendants for failing to report child abuse in violation Ohio Rev. Code § 2151.421.
- Count XIII against Defendant J.C., Minor Student 2, and John/Judy Roes #11-#33 for assault and battery.
- Count XIV against Defendant J.C. and Defendant Minor Student 2, which seeks to impose civil liability on both defendants under Ohio Rev. Code § 2307.60 for Rapes #1 and #2 (Plaintiffs' "Civil Rape Claims").
- Count XV against all Defendants for loss of consortium.

Defendants J.C. and Williams now move the Court to decline to exercise supplemental jurisdiction over all of the state-law claims Plaintiffs have brought against them pursuant to 28 U.S.C. § 1367(c). (ECF No. 23.) Alternatively, they move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts VIII and IX to the extent either count pertains to them. (*Id.*)

## II. Defendants' Motion to Dismiss Pursuant to 28 U.S.C. § 1367(c)

### A. Standard of Review

Title 28 U.S.C. § 1367(a) provides that, "in any civil action" that asserts claims which fall within a district court's original jurisdiction, that court may exercise "supplemental jurisdiction over all other claims" that do *not* fall within its original jurisdiction if they are "so related [to the original jurisdiction claims] that they form part of the same case or controversy under Article III of the United States Constitution." To satisfy this "same case or controversy" requirement, any given "supplemental" claims must derive from the same "common nucleus of operative fact" as one of the "jurisdiction-conferring" claim(s). 1 Fed. Proc., L. Ed. § 1:31. Generally, this requires only a modicum of factual "overlap." *See, e.g.*, *Blakely v. U.S.*, 276 F.3d 853, 862 (6th Cir. 2002)

(citing *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (noting that the "same case or controversy" requirement only requires a "loose factual connection" between the supplemental and jurisdiction-conferring claims)).

A district court's exercise of supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Brown v. Scaglione*, No. 20-cv-10192, 2020 WL 674291, at *1 (E.D. Mich. Feb. 11, 2020) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Gibbs*, *supra*, at 726 (noting that the doctrine is based in "considerations of judicial economy, convenience, and fairness to litigants"). Thus, under § 1367(c), a court may decline to exercise jurisdiction over any given "supplemental" claim that qualifies under § 1367(a) if it finds that

(i) the claim raises a novel or complex issue of State law,

(ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(iii) the district court has dismissed all claims over which it has original jurisdiction, or

(iv) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Generally, the "substantially predominates" inquiry under § 1367(c)(2) requires a court to determine the level of analytical and evidentiary convergence (or lack thereof) between the "original" and "supplemental" claims before it. *See* 1 Fed. Proc., L. Ed. § 1:43. In that light, a "supplemental state claim . . . substantially predominates over the claim or claims within [a] district court's original jurisdiction" when it involves different "proof[s]," "require[s] more judicial resources to adjudicate," or is "more salient in the case as a whole than the federal law claims." *Id.* (citing *Gibbs*, 383 U.S. at 726). "Predomination generally goes to the type of claim, not the number of parties involved [and] . . . is a qualitative [inquiry,] rather than a quantitative one." *Id.*

Likewise, the "exceptional circumstances" prong of § 1367(c) requires an examining court to determine whether denying the plaintiff a "federal forum" to litigate his or her supplemental

7

state-law claims "would clearly serve an important countervailing interest." *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). To that end, a court may consider whether the adjudication of a supplemental state-law claim would "prolong pre-trial practice; complicate the trial; lengthen and make more complex the jury instructions; potentially confuse the jury; result in inconsistent verdicts," and/or result in various fee-related "post-trial problems." *Brown*, 2020 WL 674291, at *2.

**B. Analysis**

There is no dispute that the Court possesses original jurisdiction over Plaintiffs' federal-law claims, which exclusively pertain to the Ohio Hi-Point Defendants. Nor is it disputed that the Court could exercise supplemental jurisdictions over Plaintiffs' state-law claims against Defendant J.C. and Williams (who are not diverse from Plaintiffs), given that they derive from the same "common nucleus of operative fact" (*i.e.*, the harassment and abuse that Plaintiff Jane Doe allegedly endured during her tenure at the Ohio Hi-Point Center). (*See* ECF Nos. 23, 27, 28.)

Nevertheless, Defendants J.C. and Williams argue that the Court should decline to adjudicate all of the state-law claims Plaintiffs have brought against them pursuant to § 1367(c). (ECF No. 23.)  To adjudicate those claims in the instant action, they contend, would (i) raise a "novel issue" of Ohio law that is best left for a state court to decide; (ii) cause Plaintiffs' state-law claims to "substantially predominate" over their federal-law claims; and/or (iii) impede the Court's general interest in preventing jury confusion and preserving judicial economy.  (ECF No. 23 at PageID #250-58.)

The Court, to a certain extent, agrees. It finds that, because Plaintiffs' state-law claims against Defendant Williams would implicate enough unique factual issues and distinct forms of evidence, their adjudication in this action would "substantially predominate" over Plaintiffs'

8

federal-law claims. Thus, pursuant to § 1367(c), it dismisses those claims without prejudice. It does not reach the same finding for any of the state-law claims asserted against Defendant J.C.

### 1. Plaintiffs Federal Claims

The Court turns first to Plaintiffs' federal claims, all of which, in various ways, seek to hold the Ohio Hi-Point Defendants liable for consistently treating reports of student-on-student abuse and harassment with "deliberate indifference." (ECF No 3 at ¶¶ 229, 242, 255-56, 329-32, 344-47.) Importantly, a school defendant's liability for gender- or disability-based "deliberate indifference" discrimination is, under the federal statutes Plaintiffs cite, cabined to the injuries that result from its "deliberate indifference" to harassment that occurred within its "substantial control." *Davis v. Monroe Cnty. Bd. of Educ., et al.*, 526 U.S. 629, 645-46 (1999); *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008) (applying the *Davis* framework—which applied to Title IX actions—to various student-on-student harassment claims brought by a disabled plaintiff under the ADA and the Rehabilitation Act). The same constraint seemingly applies to Plaintiffs' claims under the Federal Constitution, which also gravitate around the Ohio Hi-Point Defendant's alleged "lack of response . . . to bullying, harassment, and assault/battery taking place in the Ohio Hi-Point Career Center." (*See* ECF No. 3 at ¶¶ 234, 253.)

### 2. Plaintiffs' Claims Against Defendant Williams

Plaintiffs do not seek to hold Defendant Williams liable for anything that she specifically did (or did not do) on the Ohio Hi-Point Center campus or on the school's behalf. Rather, they bring claims against her based on their belief that, as the guardian of Defendant J.C., she (i) either knew or had "reasonable cause to suspect" that her ward sexually and emotionally abused Plaintiff Jane Doe—namely, through Rape #1—and (ii) failed to report or otherwise prevent that abuse. (*See* ECF No. 3 at ¶¶ 41, 68, 263, 307-08.) This suggests that *all* of Plaintiffs' state-law claims

9

against Defendant Williams will turn on her own knowledge and off-campus conduct—neither of which has much to do with the alleged "deliberate indifference" of the Ohio Hi-Point Defendants.

In other words, to make their case against Defendant Williams, Plaintiffs will need to present evidence and arguments that are generally inapplicable to their federal claims. That, in turn, would require this Court to spend what would likely be a significant amount of additional time evaluating and policing Plaintiffs' claims against Defendant Williams. For those reasons, the Court is satisfied that its adjudication of those claims would "cause a substantial expansion of the suit beyond that necessary and relevant" to Plaintiffs' federal-law claims. *Ohio ex rel. Armstrong v. Stow-Munroe Falls CSD Bd. of Educ.*, No. 5:12-cv-02237, 2013 WL 5406807, at *3 (N.D. Ohio Sept. 25, 2013). Thus, those state-law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to §§ 1367(c)(2) and (4).

### 3. Defendant J.C.

Defendant J.C., drawing upon Defendant Williams' arguments, contends that all of Plaintiffs' claims against him "are inextricably tied" to Rape #1. (ECF No. 23 at PageID #254.) He asserts that allowing Plaintiffs' state-law claims against him to proceed will "turn these proceedings into a civil rape trial" by requiring the presentation of evidence and argumentation specific to Rape #1—which, in turn, will "increase the chance of jury confusion, inconsistent verdicts, and ultimately give rise to post-trial problems with respect to judgment interest and attorney fees." (*Id.* at PageID #255.) Defendant J.C. adds further that allowing Plaintiffs' Civil Rape Claim against him to proceed will ultimately cause this Court to confront an "unresolved novel issue of state law"—specifically, whether a civil rape claim asserted under R.C. § 2307.60 invokes the same "rape shield" protections as a criminal rape action asserted under R.C. § 2907.02. (*Id.* at PageID #257.) Accordingly, he argues that all of Plaintiffs state-law claims against him—

or, at the very least, Plaintiffs' Civil Rape Claim—should be dismissed pursuant to § 1367(c). The Court disagrees.

### a. Plaintiffs' State-Law Claims Against Defendant J.C. (Excluding Their Civil Rape Claim)

It is true, as Plaintiffs' point out, that Rape #1 constitutes an "essential element" of Plaintiff Jane Doe's story of abuse. (ECF No. 27 at PageID #286.) But it is certainly not the *only* part of that story, which, on the whole, heavily involves Defendant J.C. Indeed, Plaintiffs have set forth a bevy of instances where Defendant J.C. allegedly subjected Plaintiff Jane Doe to physical and emotional abuse on school grounds—several of which allegedly occurred in the presence of Ohio Hi-Point officials or employees. (*See* ECF No. 3 at ¶¶ 33, 45, 79, 99, 137.) Thus, to the extent Plaintiffs' state-law claims against Defendant J.C. are based on those allegations, they are likely to involve much of the same evidence and witnesses as Plaintiffs' federal-law claims. Accordingly, this Court finds no persuasive reason not to try those state-law claims in tandem with Plaintiffs' federal claims.

### b. Plaintiffs' Civil Rape Claim Against Defendant J.C.

Plaintiffs' Civil Rape Claim, as alleged, seeks to hold Defendant J.C. (and, separately, Defendant Minor Student 2) liable under R.C. § 2307.60[3] for

> engag[ing] in sexual conduct with Plaintiff Jane Doe by use of force or threat of force when [he and Defendant Minor Student 2] knew or had reasonable cause to believe that Plaintiff Jane Doe's ability to resist or consent was substantially impaired because of a mental condition underlying her documented disability.[4]

(*Id.* at ¶ 361.)

---

[3] As the Supreme Court of Ohio affirmed in *Jacobson v. Kaforey*, R.C. § 2307.60 "specifically authorize[s]" plaintiffs to seek "damages based on the violation of any criminal statute, unless an exception applies." 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 11. This is so even when the defendant has not actually been convicted of the crime alleged. *Buddenberg v. Weisdack*, 161 Ohio. St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 11 ("We agree . . . that the plain language of [§ 2307.60] does not require proof of an underlying conviction.").

[4] As Plaintiffs note, this claim "sets forth the elements" of criminal rape under Ohio law. (ECF No. 27 at PageID #287-88); *see also* Ohio Rev. Code § 2907.02(A) (Ohio's criminal rape statute).

Defendant J.C. asserts that, insofar as this claim concerns him, it will involve distinct evidence (such as his off-campus "mental state at the time of [Rape #1]") and defenses that have little bearing on Plaintiffs' federal claims. (ECF No. 23 at PageID #257.) He additionally notes that, because Ohio's courts have yet to resolve whether the State's "rape shield" law applies to civil rape actions that arise under R.C. § 2307.60,[5] this Court "would likely find itself in the position of having to certify a question of state law to the Ohio Supreme Court" if it allows Plaintiffs' Civil Rape Claims to proceed. (*Id.*) Neither of these arguments is persuasive.

Defendant J.C.'s evidentiary concern, for one, fails to appreciate the direct relevance of Rape #1 to Plaintiffs' federal-law claims. Several of the Ohio Hi-Point Defendants—namely, Defendants Ramey and Harrington—are not only accused of laughing off Rape #1 after learning about it at the October 7 Meeting, but also of failing to report it "to the appropriate authorities" every day thereafter. (ECF No. 3 at ¶¶ 99, 104.) Thus, even though Rape #1 is alleged to have occurred off school grounds (*i.e.*, outside of the Ohio Hi-Point Defendants' "control"), it is still highly germane to the Ohio Hi-Point Defendants' knowledge of Plaintiff Jane Doe's abuse—and, thus, likely to play a role at trial *regardless* of whether Plaintiffs' Civil Rape Claim against Defendant J.C. proceeds. With that in mind, the Court is not persuaded that the additional, claim-specific evidence or arguments likely to be invoked by Plaintiffs' Civil Rape Claim will be so voluminous or cumbersome so as to "predominate" over Plaintiffs' federal claims.

Nor, at this juncture, is the Court convinced that, in allowing Plaintiffs' Civil Rape Claim to proceed, it will "likely" have to certify the "rape shield" issue highlighted by Defendant J.C. to

---

[5] Defendant notes, specifically, that it is unclear "whether the Ohio Legislature intended to exclude evidence related to 'specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity'" in civil rape claims arising under R.C. § 2307.60, and, to the extent they did, whether the law would also preclude the Ohio Hi-Point Defendants' "from admitting evidence of Jane Doe's other sexual activity on school grounds as part of their defense to Plaintiffs' allegations against them[.]" (ECF No. 28 at PageID #305.)

12

the Ohio Supreme Court. "[F]ederal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 286 F. Supp. 3d 919, 922 (M.D. Tenn. 2017) (quoting *Pennington v. State Farm Mut. Auto Ins. Co.*, 553F.3d 447, 450 (6th Cir. 2009)).

> To decide in favor of certification, this Court must weigh whether "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." S.Ct. Prac. R. 9.[0]1(A). Subsequently, the Court must consider if it is capable of resolving the issue of state law with the materials at hand. Only if the Court finds that there is a genuine dearth of guidance from state court precedent, so much so that it would be extremely difficult to examine properly the questions presented, will the Court then decide to certify questions to the Ohio Supreme Court.

*Tri Cnty. Wholesale Distrib.*, *Inc. v. Labatt USA Operating Co., LLC*, No. 2:13-cv-317, 2014 WL 32307, at *2 (S.D. Ohio Jan. 6, 2014) (citation omitted).

Nowhere in the Defendant J.C.'s briefing does he argue that the potential applicability (or non-applicability) of Ohio's "rape shield" law would be "determinative" of Plaintiffs' Civil Rape Claim against him. Nor is it clear whether, or for what purpose, Defendant J.C. (or any other named defendant) will actually seek to introduce evidence of Plaintiff's "sexual activity" at trial. Finally, it is, at this point, ambiguous whether there is a "genuine dearth of guidance" to determine if Ohio's "rape shield" law applies in a civil context; depending on the contours of the issue (if it arises at all), the Federal Rules of Evidence, the legislative purpose of the law, and precedent from Ohio's courts may be sufficiently instructive. *See Id.* at *2 (noting that "[i]f the Court 'believes it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so,' certification is unwarranted.") (quoting *Drown v. Wells Fargo Banks, NA*, No. 2:10-cv-00272, 2010 Wl 4939963, at *2 (S.D. Ohio Nov. 30, 2010)).

Accordingly, this Court sees no persuasive reason to dismiss Plaintiffs' Civil Rape Claim against Defendant J.C. pursuant to § 1367(c).

13

### III. Defendants' Motion to Dismiss for Failure to State a Claim

Defendants J.C. and Williams alternatively move under Federal Rule of Civil Procedure 12(b)(6) to dismiss two of Plaintiffs' claims against them—specifically, Count VIII and Count IX (which solely implicates Defendant Williams). (ECF No. 23 at PageID # 258-62.) Because the Court has already resolved that it will not adjudicate any of Plaintiffs' state-law claims against Defendant Williams, it need only address Defendant J.C.'s Count VIII argument.

#### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 55) (internal quotation marks omitted).

#### B. Analysis

Count VIII of Plaintiffs' Complaint alleges, in relevant part, that "Defendants had a mandatory duty to create and enforce anti-bullying, anti-hazing, and anti-harassment standards pursuant to R.C. §§2307.44, 3313.666(B), and 3313.534 . . . [and] failed to create and enforce such standards." (ECF No. 3 at ¶¶ 301-02.) This count appears to be asserted against all defendants, including Defendant J.C. Nevertheless, it is clear that two of the statutory provisions that Plaintiffs cite—R.C. §§ 3313.534 and 3313.666(B)—do not apply to him. *See* R.C. §§ 3313.534-.666(B)

14

(requiring the "boards of education" of Ohio's localities and districts to adopt policies "prohibiting harassment, intimidation, or bullying" and taking a "zero tolerance" approach to "violence, disruptive, or inappropriate behavior").

R.C. § 2307.44, however, is potentially applicable. That provision, in relevant part, dictates that

> [a]ny person who is subjected to hazing, as defined in division (A) of section 2903.31 of the Revised Code, may commence a civil action for injury or damages, including mental and physical pain and suffering, that result from the hazing. *The action may be brought against any participants in the hazing*, any organization whose local or national directors, trustees, or officers authorized, requested, commanded, or tolerated the hazing, and any local or national director, trustee, or officer of the organization who authorized, requested, commanded, or tolerated the hazing.

R.C. § 2307.44 (emphasis added). "Hazing," as defined in R.C. § 2903.31(A), constitutes

> doing any act or coercing another, including the victim, to do any act of initiation into any student or other organization or any act to continue or reinstate membership in or affiliation with any student or other organization that causes or creates a substantial risk of causing mental or physical harm to any person, including coercing another to consume alcohol or a drug of abuse, as defined in section 3719.011 of the Revised Code.

Nowhere in Count VIII (or in the rest of their complaint) do Plaintiffs explicitly assert that Defendant J.C. participated in "hazing" activity as defined under R.C. 2903.3(A). Plaintiffs, however, argue that they did not need to make such an allegation to sufficiently state a claim for relief under § 2307.44. (ECF No. 27 at PageID #292-93.) Rather, they argue, they were only required to give Defendant J.C. "reasonable notice" of their Anti-Hazing Claim pursuant to *Conley v. Gibson*, 355 U.S. 41 (1957). (*Id.*)

That, however, is not the correct pleading standard. It is well-established that Federal Rule of Civil Procedure 8 governs the pleading standard of "*all* civil actions and proceedings in the United States district courts"—including those based on state law. *Ashcroft*, 556 U.S. at 684; *see also Maness v. Boston Scientific*, 751 F.Supp.2d 962, 966 (E.D. Tenn. 2010) ("It does not matter

15

whether Plaintiff's claims are based upon state law or federal law: all claims . . . are subject to federal pleading requirements.") Federal Rule of Civil Procedure 8(a)(2) requires, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Given that Count VIII does not actually accuse Defendant J.C. of "hazing"—only of failing to "create and enforce" an "anti-hazing" standard—Plaintiffs have arguably not offered *any* "short and plaint statement" that they are entitled to relief against Defendant J.C. under R.C. § 2307.44. (*See* ECF No. 3 at ¶¶ 301-302.)

Even if Plaintiffs had explicitly accused Defendant J.C. of "hazing," the factual allegations in their Complaint, taken as true, do not "give rise to a plausible inference" that he abused Plaintiff Jane Doe for the purpose of "initiating" her into a "student or other organization." *See* R.C. § 2903.31(A); (ECF No. ¶¶ 33, 40-41, 64, 66, 79, 81, 91, 122.) Rather, according to the Complaint, it appears to have been purely motivated by Defendant J.C.'s own personal anger or lust. And that—while certainly actionable under other laws—is not enough to "plausibly" state a claim for relief under R.C. § 2307.44. *See* R.C. § 2307.44; *Ashcroft*, 556 U.S. at 679.

Accordingly, Plaintiffs' Anti-Hazing Claim against Defendant J.C. is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall have **TEN DAYS** from the date this order is issued to attempt to amend their claim.

### IV. Conclusion

For the foregoing reasons, Defendant J.C. and Williams' Joint Motion is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 23.) Specifically, pursuant to § 1367(c), Plaintiffs' state-law claims against Defendant Williams are **DISMISSED WITHOUT PREJUDICE**. Likewise, pursuant to Federal Rule of Civil Procedure 8(a), Count VIII of Plaintiffs' complaint is

16

**DISMISSED WITHOUT PREJUDICE** as to Defendant J.C. Plaintiffs shall have **TEN DAYS** from the date this order is issued to attempt to amend Count VIII.

This case is to remain open on the docket of this Court.

**IT IS SO ORDERED.**

| | |
|---|---|
| **3/28/2022** | s/Edmund A. Sargus, Jr. |
| **DATE** | EDMUND A. SARGUS, JR. |
| | UNITED STATES DISTRICT JUDGE |