UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JANE DOE**, *et al.*,

      **Plaintiffs,**

    v.                                        Case No. 2:20-cv-4798
                                                      JUDGE EDMUND A. SARGUS, JR.
**OHIO HI-POINT SCHOOL DISTRICT**                  Magistrate Judge Kimberly A. Jolson
**BOARD OF EDUCATION**, *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on a "Motion for Reconsideration and Relief from the Opinion and Order on February 12, 2024, Pursuant to Fed. R. Civ. Proc. 60(b)(6)" filed by Plaintiffs Jane Doe, Mary Doe, Dan Doe, and Jenny Doe. (Mot., ECF No. 206.) Plaintiffs ask the Court to modify its Opinion and Order granting summary judgment to the Hi-Point Defendants[1] on their federal claims, declining to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and dismissing the state-law claims without prejudice. (*Id.* PageID 9391–92; *see* SJ O&O, ECF No. 202.) Plaintiffs also move the Court for a hearing on their Motion. (ECF No. 214.) Hi-Point Defendants responded to the Motion for Reconsideration. (Resp., ECF No. 213.) For the reasons stated below, Plaintiffs' Motions are **DENIED**. (ECF Nos. 206, 214.)

## LEGAL STANDARD

Plaintiffs reply on Federal Rule of Civil Procedure 60(b)(6) in their Motion for Reconsideration. (Mot.) Judgment in this case was entered on February 12, 2024, and their

---

[1] "Hi-Point Defendants" collectively refers to Ohio Hi-Point School District Board of Education ("Board"), Rick Smith, Tonya N. Ramey, Jon Cook, John Wilson, Robin Harrington, Jaclyn Atherton, Melissa Gonglik, Kaitlyn King, Caleb Lang, and Amy McCarthy. (MSJ, ECF No. 122, PageID 3089 n. 1.)

Motion was filed March 11, 2024, which was 28 days later. Thus, Federal Rule of Civil Procedure 59(e) applies instead of Rule 60(b)(6). *Compare* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.") *with* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.").

Rule 59(e) permits a district court to correct its errors, "sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citation omitted) (explaining that motions filed under Rule 59(e), unlike Rule 60(b), toll the notice of appeal deadline). To be granted, "[a] Rule 59(e) motion must present newly discovered evidence or clearly establish a manifest error of law." *D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016). It is within the sound discretion of the district court whether to grant relief under Rule 59(e). *In re Ford Motor Co., Sec. Litig. Class Action*, 381 F.3d 563, 573 (6th Cir. 2004) (denying Rule 59(e) motion "premised on evidence that the party had in its control prior to the original judgment").

Motions to reconsider are "not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Ne. Ohio Coal. for the Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009) (Marbley, J.). "A party seeking reconsideration must show more than a disagreement with the Court's decision." *Dunlap v. Lew*, No. 2:15-CV-2675, 2016 WL 8198767, at *1 (S.D. Ohio June 14, 2016) (Smith, J.) (quotation omitted). "When a motion for reconsideration raises only a disagreement by a party with a decision of the court, that dispute "should be dealt with in the normal appellate process, not on a motion for reargument." *Id.* Simply stated, reconsideration motions "should not provide the

2

parties with an opportunity for a second bite at the apple." *Id.* To "discourage the filing of endless motions for reconsideration" and in the interest of "grant[ing] some measure of finality . . . courts should grant motions for reconsideration sparingly." *King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, No. 2:06-CV-0745, 2009 WL 5066912, at *1 (S.D. Ohio Dec. 22, 2009) (Marbley, J.).

## ANALYSIS

Plaintiffs open their Motion with a request that the Court find all of their federal claims viable. (Mot. PageID 9391–92.) They also ask that the Court preside over their state-law claims. (*Id.*) Plaintiffs do so by another lengthy brief of 102 pages. (Mot.) Pages 19–53 of their memorandum in support contains images, as Plaintiffs explain, that "are still shots taken from the video evidence previously provided to this Court." (*Id.* PageID 9408–9443.) Plaintiffs argue the still shots show a "pattern of deliberate indifference of the school teachers and administrators who are refusing to address the harassment of Plaintiff Jane Doe happening right in front of them." (*Id.* PageID 9408.) Plaintiffs also state in their memorandum that they:

> recognize that the Court was inundated with thousands of pages of documents, including numerous affidavits and transcripts of depositions, as well as hours of video clips filed in support of and in opposition to summary judgment filed by both parties. With that recognition, Plaintiffs will attempt to refocus the Court on documents and evidence germane to the findings and holdings in the Order which Plaintiffs address in this motion.

(*Id.* PageID 9394.) Plaintiffs continue on, explaining, they "ask this Court to perform as if it were a Court of Appeals and conduct a *de novo* review of the Order to afford an opportunity to avoid reversible error." (*Id.* PageID 9396.)

Yet in their Motion, Plaintiffs do not discuss any evidence not previously available that is now available, or a clear error of law. *See D.E.*, 834 F.3d at 728. Instead, through the vehicle of a motion for reconsideration they seek to accomplish what caselaw in this Court says they should

3

not—re-litigation of issues previously considered by the Court that were raised or could have been raised. (*See also* Resp. PageID 9612–15.)

Here are a few examples. As to Jane Doe's Americans with Disabilities Act ("ADA") and Rehabilitation Act claims, Plaintiffs argue that the Court's Opinion and Order on the summary judgment motion acknowledged that the Hi-Point Defendants and Plaintiffs disagree about whether Jane Doe went to her teachers for help or accommodations, and whether she did or did not receive any help or necessary accommodations under her Individualized Education Plan ("IEP"). (Mot. PageID 9396.) Plaintiffs state that "[w]hether conflicting facts are enough to support Plaintiffs' claims under the ADA and Rehabilitation Act is a question for a jury to determine." (*Id.* PageID 9397.)

Plaintiffs misstate the law. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party establishes there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court analyzed the ADA and Rehabilitation Act claims and found Jane Doe alleged a free and appropriate public education ("FAPE")-like claim. (SJ O&O, PageID 9356–67.) The Court found that under Supreme Court precedent in *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 157 (2017), because the gravamen of Jane Doe's claim was the denial of Individuals with Disabilities Education Act's ("IDEA") core guarantee, a free appropriate public education, exhaustion would be required. (*Id.*) Drawing inferences in Jane Doe's favor, however, she sought

4

backward-looking relief in the form of compensatory damages in connection with her IDEA claim, so the exhaustion requirement was negated.[2] (*Id.*) The Court proceeded to examine the merits of her claims. (*Id.*)

Jane Doe lacked evidence to create a genuine issue of material fact sufficient to support essential elements of her ADA and Rehabilitation Act claims under her two theories of discrimination, peer-to-peer harassment and failure to accommodate. (*Id.*) Likewise, Jane Doe did not have evidence to support her peer-to-peer harassment claim, and even if she did, there were no issues of material fact as to whether the school was deliberately indifferent to any such harassment. (*Id.* PageID 9362–63.) As for her failure-to-accommodate claim, the Hi-Point Defendants' evidence demonstrated that Jane Doe's teachers were concerned and trying to figure out how to improve Jane Doe's grades, providing her access to intervention specialists, and moving her from Algebra II to Basic Algebra II. (*Id.* PageID 9365–66.) There are no facts to support the claim that the school failed to provide Jane Doe with readily available accommodations, and Jane Doe had not put forth evidence to raise issues of material fact showing otherwise. (*Id.* PageID 9367.)

As for Jane Doe's Title IX claim, Plaintiffs repeat and reexamine the same evidence that was before this Court when it decided the summary judgment motion. (Mot. PageID 9397–9408; ECF No. 206-2, PageID 9444–9643.) Plaintiffs argue again about the two-week period between September 17 and September 30, 2019, during which they say Jane Doe made multiple reports of sexual harassment but the school did nothing. (*Id.*) The Court addressed Jane Doe's argument in its earlier Opinion and Order:

---

[2] Plaintiffs argue "Jane Doe need not exhaust administrative remedies under the ADA and Section 504," (Mot. PageID 9460–61), but the Court found exhaustion was unnecessary. (SJ O&O, PageID 9356–61; *see* Resp. PageID 9639.)

> The time from September 17 to September 30 amounts to shy of two weeks, and in light of Sixth Circuit precedents and the subsequent actions taken by Hi-Point Defendants, does not amount to deliberate indifference. *Contra Davis* [*v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 649 (1999)] (school failed to respond over a five-month period); *Vance* [*v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 257 (6th Cir. 2000)] (victim was touched by harassers for over a year and despite her and her parent's repeated complaints, school only responded with verbal warnings); *Patterson* [*v. Hudson Area Schs.*, 551 F.3d 438, 449 (6th Cir. 2009)] (despite years of harassment including bullying, physical assault, and sexual assault, school's only response was verbal reprimands).

(SJ O&O, PageID 9353.) Importantly, Jane Doe did not report the sexual assault by Minor Student 1 until October 7, 2019. (*Id.* PageID 9339.)

Plaintiffs also assert "that the determination of deliberate indifference in the Opinion and Order upon Summary Judgment is where the facts should be viewed in the light most favorable to the opposing party" and "[a]lthough this Court says it is doing so, the Opinion and Order shows otherwise." (Mot. PageID 9408.) This is an argument for the Court of Appeals, not for a motion to reconsider.

Plaintiffs support this assertion with 35 pages of still shot images with handwritten notes identifying the individuals in the images, and footnotes describing the images. (ECF No. 206-1.) For example, Plaintiffs title a still image "Defendant Ramey, Defendant Superintendent Smith standing in the lobby," identify Jane Doe, Minor Student 1, Superintendent Rick Smith, and Director Tonya Ramey in the image, and describe the image:

> At 13:59:06 actual time, Exhibit 286 shows Defendant Director Tonya Ramey and Defendant Superintendent Rick Smith standing in the lobby as Minor Student 1 is shouting to Plaintiff Jane Doe, "[expletive] that, you can do what you want, you're 18, you're coming with me, you don't need to listen to that [expletive]" and Defendant Ramey and Defendant Superintendent Smith do nothing, as covered in para. 58 of Exhibit 606, Affidavit of Plaintiff Mary Doe.

(ECF No. 206-1, PageID 9414.) As one more example, Plaintiffs title another image as "Defendant Director Tonya Ramey smiling after singling out Plaintiff Jane Doe in her English

6

class after the rape," identify Director Tonya Ramey in the image, and narrate the image: "Exhibit 585 shows Defendant Director Tonya Ramey smiling after singling out Plaintiff Jane Doe in her English class after the rape on Wed., October 30, 2019, 12:59:17 actual time, as covered in para. 322 of Plaintiff Mary Doe's Affidavit, Exhibit 606."[3] (*Id.* PageID 9439.) All of the surveillance footage was before the Court previously, without the handwritten notes and footnote descriptions.

The Hi-Point Defendant respond that it is the Does who are providing the note interpretations of what is happening in the still images, and the interpretations are improper:

> [T]he Does (including Mary Doe, who was not present for any of the interactions in the videos) are improperly providing their own interpretation of various things that are happening in these screenshots. For example, they do not know what various staff members saw or heard. Even if the Court assumes that Mary Doe provided an accurate description of what was happening in the various screenshots, which she did not, it does not establish deliberate indifference because there is no corresponding evidence that the Ohio Hi-Point Defendants saw, heard, knew, or were aware of the various incidents. Additionally, there is no sound to the videos, so the supposed direct quotations provided by Mary Doe (who, again, was not present for any of the incidents in the videos) are questionable given that the Does did not know or remember the majority of those statements at the time of the Title IX investigation, or when they filed the Complaint, or during their depositions but did in 2023 when they were opposing the Ohio Hi-Point Defendants' Motion for Summary Judgment. Despite the fact that Mary Doe was not present for any of the incidents in the screenshots in the Does' Motion for Reconsideration, it is Mary Doe's affidavit testimony that has been provided to support what is supposedly happening in the screenshots. (Mary Doe Dep., Vol. 1, 239:14–18, 243:9–244:6, 245:6–13; Doc. #206-1, Plfs.' Mot. Recon. 19–52).

(Resp. PageID 9625–26; *see also id.* PageID 9627–28 (discussing still image examples and why they are improper).)

The Court agrees this evidence is fraught with problems. Perhaps of most concerning, is Mary Doe commenting or interpreting on various incidents without being physically present in

---

[3] The record showed Director Ramey learned of the tool shed incident on October 31, 2019, not the 30th. (SJ O&O, PageID 9342.)

the first instances. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") Even if Mary Doe did have personal knowledge of what was happening at Hi-Point, or if it was Jane Doe providing the commentary on the still images and she had personal knowledge, an "affiant's interpretation of surveillance footage may not be considered on summary judgment because it would constitute inadmissible hearsay and violate the best evidence rule." *Watson v. Ohio Ambulance Sols., LLC*, No. 1:20-CV-802, 2022 WL 2133739, at *4 (S.D. Ohio June 14, 2022) (Litkovitz, J.); *see* Fed. R. Evid. 801 (explaining hearsay is a statement—including written assertion—the declarant does not make while testifying and that a party offers into evidence to prove the truth of the matter asserted in the statement), Fed. R. Evid. 802 (hearsay is inadmissible). Plaintiffs do not mention hearsay in their brief and do not cite to any applicable hearsay exceptions.

      Plaintiffs cite three cases that they did not previously address in their response to the summary judgment motion. (Mot. PageID 9391; ECF No. 206-2, PageID 9451, 9454–60 (citing *Doe v. Metro. Gov't of Nashville & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022); *Hart v. Paint Valley Loc. Sch. Dist.*, No. C2-01-004, 2002 WL 31951264 (S.D. Ohio Nov. 15, 2002); *McCoy v. Bd. of Educ., Columbus City Sch.*, 515 F. App'x 387 (6th Cir. 2013).) The most recent of these cases was *Metro. Gov't of Nashville*, 35 F.4th 459, decided on May 19, 2022, almost a year before the Hi-Point Defendants moved for summary judgment. Plaintiffs could have addressed it in their response.[4]

---

[4] Plaintiffs did cite the *Metro. Gov't of Nashville* in a motion for leave to file a surreply brief to

Even if this cases had been decided after this Court's summary judgment Opinion and Order, *Hart*, 2002 WL 31951264, and *McCoy*, 515 F. App'x 387, are teacher-student harassment cases, not peer-to-peer harassment cases. *Wamer v. Univ. of Toledo*, 27 F.4th 461, 469–71 (6th Cir. 2022) (explaining the difference between Title IX teacher-student harassment cases and peer-to-peer cases, and detailing the "important policy reasons for imposing a less stringent standard in cases alleging teacher-student harassment").

As for *Metro. Gov't of Nashville*, Plaintiffs now argue that Jane Doe has a "before" Title IX claim based on her reports of sexual harassment before the school took action. (Mot. PageID 9456–58.) Plaintiffs misunderstand the "before" theory of liability. A "before" theory of liability under Title IX focuses on liability for a school's conduct before a student was harassed, different from an "after" theory for a school's conduct after the student was harassed. *Metro. Gov't of Nashville*, 35 F.4th at 464.

The *Metro. Gov't of Nashville* Court held that its decision in *Kollaritsch v. Michigan State Univ. Bd. of Trustees* did not bar the plaintiffs from bringing Title IX "before" claim. *Id.* at 466; *see* 944 F.3d 613, 619 (6th Cir. 2019).[5] There, the plaintiffs, Jane and Sally Doe, had requested disciplinary records across defendant public school system from 2012 to 2016 related to sexual misconduct, which resulted in "over 950 instances of sexual harassment, over 1200 instances of inappropriate sexual behavior, 45 instances of sexual assault, and 218 instances of inappropriate sexual contact." *Metro. Gov't of Nashville*, 35 F.4th at 464. Many of those incidents involved students taking or distributing sexually explicit photographs or videos of

---

the summary judgment motion (ECF No. 144, PageID 3128), but the motion for leave was denied (ECF No. 146).
[5] In *Kollaritsch*, the Sixth Circuit limited certain Title IX claims based on student-to-student sexual harassment. 944 F.3d 613.

themselves or other students, and the Court found that "[d]espite the frequency of inappropriate sexual behavior in [the school systems'] facilities, the incidents were handled on an individual basis by the principal of the school in which the sexual offender was enrolled." *Id.* The Court found that unlike the *Kollaritsch* plaintiffs, Jane and Sally Doe had alleged their unwelcome sexual contact resulted from the school system's indifference to the problem of pervasive sexual misconduct in the schools. *Id.*

In comparison, Plaintiffs do not present evidence of an extensive history of sexual harassment or bullying at the school before the two-month period Jane Doe attended the school. (*See* ECF No. 206-2, PageID 9457–58; Compl., ECF No. 3.) The school acted to remedy the sexual harassment Jane Doe reported within two weeks. Action from then on by the school included but was not limited to taking written statements from Jane Doe and Julian Meeker, orally reprimanding Minor Student 1, issuing no contact orders between Minor Student 1 and Jane Doe, notifying teachers, beginning a Title IX investigation, interviewing 44 witnesses, reviewing evidence, and multiple meetings with Jane Doe and her parents. (*See* SJ O&O, PageID 9352–53 (listing steps taken by the Hi-Point Defendants); PageID 9355.)

One final matter on Jane Doe's Title IX claim: a portion of Plaintiffs' Motion is devoted to a discussion of the sexual assault of Jane Doe by Minor Student 2 on October 30, 2019. Plaintiffs describe this rape as brutal and in great detail. (Mot. PageID 9448, 9453.) As this Court emphasized in its summary judgment Opinion and Order, it takes Jane Doe's rape allegations very seriously. (SJ O&O PageID 9330.) The question before the Court, though, was whether the Hi-Point Defendants were deliberately indifferent to Jane Doe's reports. (*Id.*) The Court answered that question in the negative. Because the Hi-Point Defendants were not deliberately indifferent, their deliberate indifference cannot be a but for cause of the sexual assault. *See*

10

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 623 (6th Cir. 2019).

After analyzing Plaintiffs' Motion, the Court concludes Plaintiffs have raised nothing new for the Court's consideration. This is not the proper forum for reargument, and the Motion for Reconsideration (ECF No. 206) is **DENIED**.

### GUIDANCE FOR FUTURE FILING IN THIS COURT

Lastly, the complaint was 84 pages, and contained 381 paragraphs and 15 counts. (Compl.) The briefing on the Motion for Reconsideration was about 140 pages. (Mot.; ECF No. 213.) The briefing on the motion for summary judgment and motion to strike spanned around 400 pages, without exhibits, of which there were over 600. (ECF Nos. 122, 141.)

Federal Rule of Civil Procedure 8, subsections (a)(1) and (2) direct the complaint be "a short and plain statement." Fed. R. Civ. P. 8(a)(1), (2). Rule 8(d) requires all pleadings, including a complaint, to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Civil Rule 7.2(a)(1) of this Court's Local Rules states: "All motions and applications tendered for filing shall be accompanied by a memorandum in support thereof that shall be a brief statement of the grounds, with citation of authorities relied upon." S.D. Ohio Civ. R. 7.2(a)(1). Subsection (a)(3) of the same rule states the "Court prefers that memoranda in support of or in opposition to any motion or application to the Court not exceed twenty page." S.D. Ohio Civ. R. 7.2(a)(3). Subsection (e) of Civil Rule 7.2 explains that "[e]vidence submitted, including discovery documents, shall be limited to that necessary for decision and shall include only essential portions of transcripts or exhibits referenced in the memorandum."

The Court recognizes that the factually-complex nature of this case. The Hi-Point Defendants needed to respond to Plaintiffs' lengthy complaint and briefs. Despite these facts, the Court finds Plaintiffs' counsel has not made a good-faith effort to comply with the above rules.

The Court **DIRECTS** Plaintiff's counsel to review the above Rules, and all of this Court's Local Rules, before making any new filings in this Court. Failure to do so might result in an admonishment or sanctions.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **DENIES** Plaintiffs' Motion for Reconsideration and Relief from the Opinion and Order on February 12, 2024, Pursuant to Fed. R. Civ. Proc. 60(b)(6). (ECF No. 206.) Given that holding, the Court finds a hearing is unnecessary and **DENIES** Plaintiffs' Motion for Hearing. (ECF No. 214.) This case remains closed.

**IT IS SO ORDERED.**

**3/29/2025**                                                      **s/Edmund A. Sargus, Jr.**
**DATE**                                                                **EDMUND A. SARGUS, JR.**
                                                                              **UNITED STATES DISTRICT JUDGE**